Henderson, Auditor, *v.* The London and Lancashire Insurance Co.

Filed Sept. 29, 1893.

------♦------

16,948.

HENDERSON, AUDITOR, *v.* THE LONDON AND LANCASHIRE INSURANCE COMPANY.

STATUTE CONSTRUED.—*Constitutional Law.*—*Fireman's Fund.*—*Insurance.*—*Taxes.*—The act of March 9th, 1881, Acts 1881, p. 415, for the creation of a fireman's pension fund, etc., is unconstitutional as being in conflict with the provision of the constitution relating to the title of acts.

SAME.—*Taxes Uniform and Equal.*—*Constitutional Law.*—*Fireman's Fund.*—*Insurance.*—Such act is also unconstitutional as not being uniform and of equal rate of taxation, applying to a portion of a class only.

TAXES.—*Power of Taxation.*—*Equal and Uniform.*—*Class Legislation.* —The taxing power of the State can not be made the means of levying municipal taxes upon a fraction of a class, and of bestowing the taxes so levied, upon a small fraction of the citizens.

MUNICIPAL CORPORATION.—*Firemen.*—*Public Officer.*—Firemen are not servants of the State, nor of the county in which they live, but are creatures and servants of a municipality.

From the Marion Superior Court.

*A. G. Smith,* Attorney-General, *F. M. Finch, J. A. Finch, J. S. Duncan,* and *C. W. Smith,* for appellant.

*J. W. Kern* and *T. Bates,* for appellee.

HACKNEY, J.—The appellee brought this action in the lower court to enjoin the appellant, as auditor of State, from revoking, or attempting to revoke, the license or authority of the appellee, as a foreign insurance company, to do business in the State of Indiana.

The petition alleged that the appellee was, and for a number of years had been, engaged in business in the counties of this State; that since the 3d day of March, 1877, it had fully complied with the act of the General Assembly, in force from that date (R. S. 1881, section 3765), alleging in detail the steps taken in compliance with said act and in otherwise obeying the laws of the State relating to the transaction of its business in this State; that it now holds, and ever since the 3d day of March, 1877, it has held, proper certificates of authority from said auditor to transact business in the various counties of this State, as a foreign insurance company; that said auditor is threatening to, and will, if not restrained, revoke the authority so held by said company, said auditor therein acting under the act of the General Assembly, approved March 9, 1891, for the creation of a fireman's pension fund, etc., Acts 1891, p. 415.

It is not alleged that said company complied with, or attempted to comply with, said act of March 9, 1891, in reporting its business done in Marion county, but it is alleged that said act is, as to foreign insurance companies, unconstitutional and confers no legal power to revoke the authority of such companies to transact business within this State.

The superior court, in special term, overruled the appellant's demurrer to the petition, and upon exception to said ruling the judgment was affirmed by said court in general term. The error assigned in this court is said ruling of the superior court in general term.

The title and first three sections of the act of March

9th, 1891, the act the constitutionality of which is here questioned, are as follows:

"An act to create a fireman's pension fund, for the pensioning of disabled firemen, and the widows and the dependent children, mothers and fathers of deceased firemen, to create a board of trustees of such fund, to authorize the retirement from service of disabled members, and of all members after a service of twenty-five years, and pensioning of such members, and for other purposes in connection therewith in cities in this State having paid fire departments, and declaring an emergency.

"Section 1. *Be it enacted by the General Assembly of the State of Indiana,* That every fire insurance company doing business in this State, and not organized under the laws of this State, shall, in the months of January and July of each year, report to the auditor of each county in the State wherein there is a city having a fire department paid by said city, under oath of the president and secretary of such company, the gross amount of all receipts received by such company on account of insurance premiums for insurance upon property in said county for the six months preceding the last day of the last preceding December and June, and of the losses actually paid during the same period, and shall, at the time of making such report, pay into the county treasury of such county one dollar on every one hundred dollars of the excess of said receipts over and above said losses. Any fire insurance company which shall fail or refuse to render an accurate account of its receipts and losses, as herein provided, or to pay the required tax thereon into the county treasury shall forfeit, for the benefit of said fund in said county, one hundred dollars for each day such report or payment shall be delayed, to be recovered in an action in the name of the State of In-

diana on the relation of the auditor of said county, in any court of competent jurisdiction; and in case of such failure or refusal of any such fire insurance company to make report or payments as herein provided, it shall be the duty of such county auditor, within ten days thereafter, to report such failure and refusal to the auditor of State, who shall, upon the receipt of such notice, forthwith revoke all authority or license heretofore granted to such defaulting insurance company to do business in this State; and no further authority or license to do business in this State shall be granted or issued to such insurance company until the county auditor aforesaid shall have certified to the auditor of State that such insurance company has fully complied with the provisions of this act.

"Section 2. Any county auditor, knowing that any fire insurance company is doing business in any city in said county having a fire department paid by said city contrary to the provisions of this act, who shall fail for ten days after knowledge thereof to report such fact to the auditor of State, shall forfeit and pay for the firemen's pension fund in said county, for each day's failure after the expiration of said ten days, the sum of twenty-five dollars, to be recovered in an action brought in any court of competent jurisdiction by the board of trustees of the fire department of such city.

"And if the auditor of State, after receiving notice from the county auditor of any county that any fire insurance company is doing business in such county contrary to the provisions of this act, shall fail or refuse forthwith to revoke the authority or license of such company to do business in this State, such auditor of State shall forfeit and pay for the benefit of the firemen's pension fund in said county the sum of fifty dollars for each day's failure, the same to be recovered in an action

brought by said county auditor in any court of competent jurisdiction in Marion county.

"Section 3. The sum so paid into the county treasury of each county, as provided in section 1 of this act, shall be set apart and designated as a 'Firemen's Pension Fund,' and the same shall be held and disbursed for the purposes and objects and in the manner provided for in this act."

The remaining sections of the act provide for the election, service, and duties of trustees for such pension fund, the manner of distributing and controlling such fund by such trustees, and that the act shall not be so construed as to affect existing legislation requiring insurance companies to pay taxes into the treasury of the State.

The first objection to the act is that it violates section 19, article 4, of the State constitution, which is as follows: "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title."

It is important to ascertain the full scope and meaning of this provision of the constitution, and, as has often been said by this court, one obvious purpose was to limit an act to one subject and matters properly connected therewith; another purpose was that such subject—not the matters connected therewith—should be expressed in the title, and still another purpose was to limit the invalidity, by reason of any failure to so express the subject in the title, to so much of the subject as might not be so expressed. But can we say that these were the only purposes?

In *Grubbs* v. *State*, 24 Ind. 295, it was declared that the provision was designed to prevent mischief in legis-

lation, which had prevailed before its adoption. Said Justice Frazer: "One of them was stated to be the enactment of laws under false and delusive titles, whereby measures had procured the support of legislators, who were thus deceived as to the character of the laws; and another was deemed to be the conjunction, in one act, of two or more subjects having no legal connection, for the purpose of procuring the passage of laws which might not, alone, command legislative sanction, upon the strength of popular measures embraced in the same act."

Judge Cooley, in his work on Constitutional Limitations ( 6 ed.), p. 171, in speaking of the purpose of this provision in the constitutions of the States, says : " It may therefore be assumed as settled that the purpose of these provisions was : *first*, to prevent *hodge-podge* or 'log-rolling' legislation; *second*, to prevent surprise or fraud upon the Legislature by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked and carelessly and unintentionally adopted ; and, *third*, to fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered, in order that they may have an opportunity of being heard thereon, by petition or otherwise, if they shall so desire." See, also, *In re Road, etc., of Phœnixville*, 109 Pa. St. 44.

At a time when the constitution was fresh from the hands of its framers, this court held that one of the objects of this provision was to promote the codification of the enactments of the Legislature. *Indiana Central R. W. Co.* v. *Potts*, 7 Ind. 681.

We could multiply the desired ends and laudable objects of this provision as expressed by the courts, but we

deem those already stated as sufficient for the proper determination of the question under consideration.

Counsel for the parties have cited many cases where acts covering very many subjects have been construed. Some of these manifest the spirit of liberality in construing statutes with reference to this provision, while others look more closely to the letter of the provision. It is observed, however, that, owing to the diversity of the subjects legislated upon, and the varied forms of expressing those subjects, precedents are without assistance further than as they apply general rules.

In construing the enactments of the Legislature, with reference to their form under the constitution, we are fully impressed with the importance, as well as the delicacy, of our task. Due respect for the rights, privileges, and powers of the legislative department of the State government, and a proper regard for the direction of the fundamental laws, make it our duty to uphold legislation, where it is not clear that the constitutional command has been violated or neglected, and, where it has clearly been violated or neglected, to so decide without regard to the objects sought or the interests involved in such legislation.

To properly apply the rules suggested for our guidance, we should first ascertain the subject of the act in question.

From the sections of the act as quoted above, it will be seen that the object was to make a certain class of firemen pensioners upon a certain class of insurance companies, and to provide and direct the instrumentalities through which this end should be accomplished. We realize that exception may be taken to this statement of the object, since it is contended that the act is not only an exercise of the taxing power, but is in a sense one of the penal conditions upon which such companies are

permitted to do business in the State. Of this contention, we will speak hereafter. That we give correctly the object of the act is supported by the further contention that such insurance companies have an interest in the preservation of the property insured, which interest is advanced by the maintenance of a wise, diligent and faithful service of the fire companies, and that they owe some duty in maintaining such service. It is in this line that the act finds its chief support as a just measure.

It will be found difficult, if not impossible, to discriminate between a statement of the *object* of this act and a statement of its *subject*. This may not be true as a general rule with enactments, but we find it so in this instance. Possibly it may not be necessary in expressing the subject of this act, in order to comply with the constitutional provision, that the instrumentalities through which the end is accomplished should be stated as a part of the subject, but, to our mind, it is clear that the subject can not be less than the object in other respects, as we have stated it. "An act concerning pensions" would have been a general statement of the subject of the act, but it would have been too general to advise any one intelligently of its character. Being an expression of the Legislature, one of whose functions is to deal with public revenues, it would be supposed that pensions were to be provided from such revenues, but suppositions are not to be indulged, when the Legislature is directed to express the subject—certainly with enough particularity that, at least, one accustomed to reading such expressions might understand something of its objects and effects.

It should be more than a mere warning to the reader, that unless he shall read the act and learn if his interests are involved his property may be affected by it.

Ordronaux's Constitutional Legislation states, page

590, that "titles should distinctly recite what the particular subject of the law is." This may often be done by language quite general; then, again, there are instances which require particularity. If the subject is composed of two or more essential elements, the expression of one of such elements in the title would not suffice. The absence of one of such elements in the title would be as misleading, and might be as pernicious, as the evils sought to be obstructed by the constitution. The subject of this act, as we have indicated, is to gather funds from foreign insurance companies, and to dispose of such funds for the relief of firemen. The title expresses the first of these objects included within the subject, but wholly omits the other of such objects.

In *State* v. *Young*, 47 Ind. 150, a test was prescribed for determining if the subject is expressed in the title. It was said, in speaking of that element of the subject claimed to be absent from the title: "Suppose that there was no other provision in the act. * * * If the section could not thus stand alone under the title, it must fall." We apprehend that this is always true where only a part of the subject is expressed, and that it is especially true where that part of the subject omitted from the title is not naturally or ordinarily connected with that part of the subject which is expressed in the title.

Omitting that part of the act relative to the bestowal of such fund upon firemen, the provision requiring such companies to contribute to such fund could not stand alone, under the title of the act, as the subject is expressed. The requirement that the subject expressed should apprise the people of the subject of legislation, in order that an opportunity for a hearing or for petition may be had, is far from being complied with in the act before us. No notice whatever to those expected to con-

tribute to such fund is given. It may be said that other taxing acts have been held valid without expressing in the title the classes affected by them, but we think this will not be found true where the source is not general, and in the exercise of the natural and ordinary powers of taxation. Here we have an unusual and extraordinary exercise of the power, not only in the object or purpose, but in the source from which the fund is to be raised, and in the manner of levying it.

The act under consideration is attacked as violating several other provisions of the Constitutions of the United States and of the State of Indiana, but we do not deem it our duty to determine but one of the questions so presented, having already held the act insufficient as to its title.

It is said that the act is an attempted exercise, by the Legislature, of the power of taxation, and that being local, not uniform, and for no public purpose, is in violation of the taxing power as conferred by the constitution, article 10, section 1. That provision of the constitution is as follows:

"The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious or charitable purposes, as may be specially exempted by law."

Is the enactment of the law before us an attempted exercise of the power of taxation as conferred by the constitution?

In several States, this character of legislation has been before the courts for construction, and we find the decided weight of authority holding that it is such an attempt. *City and County of San Francisco* v. *Liverpool,*

*etc.*, *Ins. Co.*, 74 Cal. 113; *State* v. *Wheeler*, 33 Neb. 563; *Philadelphia Ass'n, etc.*, v. *Wood*, 39 Pa. St. 73; *State* v. *Merchants' Ins. Co.*, 12 La. Ann. 802.

The only cases holding it as the exercise of any other power are *Trustees, etc.*, v. *Roome*, 93 N. Y. 313, where it is expressly held that such power is in the exaction of a license fee, or the fixing terms upon which such companies may transact business in the State; and *Fire Department of Milwaukee* v. *Helfenstein*, 16 Wis. 142, where it is expressly held that the power exercised is "the police power inherent in the sovereignty of the State." Another case, that of the *Firemen's Benevolent Ass'n* v. *Lounsbury*, 21 Ill. 510, stands alone in declaring it is not only the taxing power, but that such power was correctly exercised, under the peculiar form of the constitution of that State.

We are not called upon to decide whether the Legislature might properly have required the exaction here levied, as a condition upon which such companies could do business in this State, as it was held in New York, but we are of the opinion that no such attempt was made. Since March, 1877, as we have shown, our legislation has prescribed the terms upon which such companies may transact business in this State (section 3765, *supra*, R. S. 1881), and, as alleged in the complaint, this appellee, during that period, has fully complied with such terms. The act in question does not purport to add its exaction to the conditions so prescribed by the act of 1877; on the contrary, it expressly denominates the levy a "tax."

If there were room for question as to the correctness of our conclusion, we should find support from the concession of appellant's able counsel, that it must be treated as an effort to exercise the taxing power.

Counsel for appellant further say: "Of course, we

concede that the Legislature can not levy taxes for any thing but public purposes, as, for instance, to assist a private person in his business, or even to aid him in misfortunes from fire, or flood, or other casualty.'' But, it is insisted that the declared burden is for a public purpose, in that it is levied for the benefit and compensation of those, and the families of those, whose lives have been, or may be, imperiled or lost in pursuing the arduous and dangerous duties of saving from the flames the property of the citizens; that in the discharge of these duties the firemen sustain such relation to the public as to become, in the true sense, public servants; that the public demands the highest degree of skill, diligence, and good faith from these servants, and that this degree is best attained by holding out to them the certainty of care when injured, and family support when age, disease, or death comes · upon them. To establish this contention, counsel devote considerable space in their briefs to quotations from text-writers, and from adjudged cases, principally the cases we have referred to as not adhering to the proposition that this exaction is a tax, and they exhibit marked ability in building the theory so urged upon us. To this theory we are not inclined to give our adherence. The Wisconsin rule does not hold that the right exists in behalf of firemen as public servants. It disregards the relationship existing between firemen and the public, and justifies the exaction as the exercise of a police power, and in imposing the burden upon foreign companies as the condition upon which they are admitted to do business in the State.

The Illinois rule can best be given by quoting from *Firemen's Benevolent Ass'n* v. *Lounsbury, supra.* It is there said, p. 513: ''The other objection is, that here a revenue is attempted to be raised, not for State purposes, nor yet to meet any public exigency or want, but purely

for the benefit of a private charity. That it is not required to be paid into the State treasury but must be paid to this private corporation, for whose benefit the burden is imposed. The general grant of legislative power, found in the constitution confers upon the General Assembly all legislative power, and authorizes the law-makers to pass any laws, and do any acts, which are embraced in the broad and general word *legislation*, as known and defined in the English language. It authorizes the passage of any law which could be enacted in the most despotic goverment. It even authorizes every thing which the people could enact in their primary capacity. Any thing which they would have a right to embody in the constitution itself."

It is further stated, p. 514: "There is nothing to be found in the constitution which can be held to inhibit the Legislature from imposing burdens, or raising money from citizens of the State, which is not for the direct benefit of the State, and is never designed to belong to the State."

The only reference made to the relationship between firemen and the public is as follows: "With the view we take of this case, it is immaterial whether this be considered a public or a private charity. But it should more properly be considered a public charity."

Our constitution gives no such unlimited power to the Legislature, and, as an authority for the construction of powers under our constitution, we can not accept this decision. Nor are we inclined to give special weight to it in favor of the contention of the appellant, that firemen are public servants within that sense which would admit of the exercise of the taxing power of the State. The New York rule is that the percentage of receipts is exacted as a condition upon which companies are admitted to transact business in the State, as the terms of such

admission or the license fee for such privilege. This is not in the exercise of the taxing power, but so far as it may be recognized as prescribing the terms upon which foreign corporations are admitted into the State, it is unimportant whether firemen are public servants or not. When it is held that legislation is for the purpose of defining the terms of admission, there is in this State no question of its constitutionality. Therefore, the New York rule involves the question whether firemen are public servants only as to the distribution of a fund conceded to be raised by proper methods, namely: as the condition of admission into the State. Such is not the whole question with which we are dealing. Here we have a law enacted in the pretended exercise of the taxing power of the State, exacting a penalty from that part of the class of foreign insurance companies which do business in the four counties of this State having cities with paid fire departments, and the fund thus exacted by the power of the State is not for the benefit of the State, is not for the benefit of those portions of the State whose business with such companies must contribute to said fund.

The business done in each of the four counties affected bears the burden of the exaction, and the fund is devoted to the benefit of firemen within four cities only. The property of such counties outside of such cities get no protection from such firemen, and its owners have no pecuniary interest in them. While the fund for the benefit of the city is obtained from the companies, the companies must first obtain it from the whole people of the county, thus requiring the people of the county, indirectly, to contribute to the pensioning of city firemen. The question, therefore, should be, are the firemen benefited, the servants of those whose taxing power is exerted in their behalf? We think they are not, even if

we should concede that they were in any sense servants, or dependent upon the bounty, or were the objects of the charity of the people of such cities. It must be borne in mind that they are not the servants of the State; they are not the servants of the county in which they live. Though they may deserve the highest praise and the most liberal rewards for their daring and hardships in combating the flames, they are the creatures and the servants of but a small subdivision of the State.

Here the taxing power of the State is exerted for the benefit of a few of the citizens of the State, who hold the obligation of their respective cities for their courage and their valued service, and the purpose is that this power shall be exerted for the discharge of that obligation. We do not regard this as the most objectionable feature of this act. We have ninety-two counties in this State, whose united power is thus exerted in levying a tax upon certain foreign insurance companies. As to the State, all foreign insurance companies constitute a class, and of this class all are not subject to the operation of this act; only those who do business in four of such counties. The taxing power of the State can not thus be made the means of levying municipal taxes upon a fraction of a class, and of bestowing the tax so levied upon a small fraction of the citizens of the State—all of her citizens standing in like relation to her, unless she owes them some peculiar obligation not existing in serving as firemen for some city. The taxing district of the State, wherein taxes are directed for the benefit of those serving the State, is the whole State. State taxes are not of uniform and equal rate when they apply to a portion of a class only and omit a portion of the same class, and this is no less true because the classes may be divided by county lines.

Uniformity in rate, as required by the constitution,

means that the same rate shall apply alike to all in any given taxing district. *Cleveland, etc., R. W. Co.* v. *Backus,* 133 Ind. 513, 33 N. E. Rep. 421; *Gilson* v. *Board, etc.,* 128 Ind. 65.

The four counties affected have no power, under this act, to make the percentage from the business of the companies the condition upon which business shall be done by such companies, and the act does not purport to give such power; the percentage is not levied under any law or by any method known to the gathering of county or city revenues. The act is a plain and unmistakable effort to use the taxing power given to the State, and for the purposes of the State in behalf of a favored class in a few of the cities of the State. As we have said, this can not be done.

The cases of the *City and County of San Francisco* v. *Liverpool, etc., Ins. Co., supra; State* v. *Wheeler, supra; Philadelphia Ass'n, etc.,* v. *Wood, supra; State* v. *Merchants' Ins. Co., supra,* fully sustain our conclusion.

The judgment of the lower court is affirmed.

Filed June 16, 1893.