JOHN L. HYLAND, SHERIFF, ETC., *v.* WILLIAM C. SHARP.

[41 South. Rep., 264.]

CONSTITUTIONAL LAW.   *Due process of law.   Constitution United States,
    XIV amendment.   Constitution* 1890, *secs.* 14 *and* 24.   *Privilege
    tax.   Law* 1904, *ch.* 76, *p.* 58.   *Class legislation.*

  Laws 1904, ch. 76, p. 58, sec. 57, imposing a privilege tax on persons
    doing a money-lending business, securing their loans by liens on
    designated kinds of personal property, is unconstitutional; it is
    a deprivation of property without due process of law contrary
    to the XIV amendment to the United States Constitution and
    constitution 1890, secs. 14 and 24.   *Rodge* v. *Kelly, ante,* 209.

FROM the circuit court of Warren county.

HON. JOHN N. BUSH, Judge.

Sharp, the appellee, was plaintiff in the court below; Hyland, the sheriff of the county, appellant, was defendant there.   Defendant, believing that the statute was valid, exacted from plaintiff a privilege tax under Laws 1904, ch. 76, sec. 57, p. 58, which, following the first section levying the tax, is in these words, viz.:

"Sec. 57.   On each individual, firm or corporation doing a money lending business on personal securities, such as household and kitchen furniture, or wearing apparel, pianos, sewing machines, jewelry, silver, glass, plate or ware, whether such loan is secured to the lender by bill of sale of such personal property, or whether such loan is secured by mortgage or deed of trust, $500.00."

The suit was for the recovery of the money so exacted, and which plaintiff paid under protest, claiming that the pretended law was unconstitutional. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

*Dabney & McCabe,* for appellant.

The assignments of error all raise one simple single question of law, and that is whether or not sec. 57, Laws 1904, p. 71, is unconstitutional and void.

The appellant claims that this question was decided affirmatively in the case of *Rodge* v. *Kelly, ante,* 209 (40 South. Rep., 552). It is true, as contended for by appellant, that this court did in that opinion decide that this sec. 57 was unconstitutional; and there is no one more to blame for that decision than ourselves. We were the attorneys for the appellee in that case, and did not argue the case properly. The fact is, we were swept off our feet by the very able brief of the learned counsel for the appellant, but since that time we have looked further into the matter and have changed our minds entirely as to the law of the case. We think that the decision of the court in that case was wrong, and this appeal has been taken, under instructions from the attorney-general of the state, for the express purpose of having the court review and reverse its decision in that case.

The court based its decision in that case upon the ground that the section referred to is class legislation, and is in violation of the 14th amendment to the constitution of the United States. In that view of the question we think that this court is in error for reasons now to be stated. A comparison of sec. 57 of the act of 1904 with the other sections of that act will show, we think, conclusively that the purpose of the legislature in enacting sec. 57 was to classify the business therein defined and to impose a tax thereon for revenue; that there was no purpose on the part of the state to prohibit the business, and this being true, said section is constitutional and valid.

The case relied on by the learned counsel for the appellant in the case of *Rodge* v. *Kelly, supra,* and which doubtless had great weight with this court, was one in which a privilege tax similar in many respects to the one under consideration was declared void. That case, however, has no application whatever to the case at bar, because in that case the only question which the court decided was that the charter of the city did not authorize it to impose a privilege tax on a lawful business which was, in effect, prohibitory of that business. In other words, that court did not decide that the legislature did not have the right or power to impose a privilege tax that would, in effect, prohibit that business, but on the contrary, clearly indicated that it might have done so.

The case of *Gundling* v. *Chicago,* 177 U. S., 183, is, we think, precisely in point, and decisive of this question.

*Anderson & Voller,* for appellee.

We do not suppose that it is necessary to present any argument in this court on the constitutionality of the act, as that has been thoroughly argued in the *Rodge case,* and the act declared unconstitutional.

We have carefully read the case of *Gundling* v. *Chicago,* 177 U. S., 183, referred to and relied on by counsel, and the one which they say brought about their wonderful conversion and change of conviction on their part, and we find nothing whatever in that case that even remotely bears, in our judgment, upon the case involved. It cannot, in our opinion, be considered for a moment as authority for the contention of counsel for appellant. The court will notice that in that case there was an effort on the part of the city of Chicago, under its police power, to regulate the sale of cigarettes; and the law applied clearly and alike to all cigarette dealers, and was, therefore, entirely unlike the act under consideration.

But we apprehend that even in the exercise of its police power the city of Chicago would not have legally made the law apply

in one way to the sale of cigarettes when in packages with pink labels, and apply in another way to packages with white labels, and another way to packages with red labels. Nor could it have made this law apply to dealers who sold cigarettes to left-handed people, or one-eyed people, or cross-eyed people, and not let it apply to all others. This would have been clearly an arbitrary and illegal classification.

So in the case at bar, it would have been perfectly proper from a legal standpoint for the legislature to have imposed an occupation on all money lenders, graduating the amount of the taxes by ·the amount of loans made during the fiscal year, or according to the population of the town or city in which the lender operated. But the legislature clearly had no right to base their arbitrary classification for taxation upon the kind of security taken for the loan and regardless of the amount of interest charged. It would clearly be unconstitutional for the legislature to impose one kind of occupation tax on persons lending money on mules as a security, and another kind on those lending on cattle as security, and another kind on those lending on poultry as security, and another kind on those lending on household and kitchen furniture, musical instruments and such like as security, and then exempt entirely from taxation those lending on real estate as security.

WHITFIELD, C. J., delivered the opinion of the court.

The case of *Gundling* v. *Chicago,* 177 U. S., 183 (20 Sup. Ct. Rep., 633 ; 44 L. ed., 725), has no application to the case at bar. It certainly needs no citation of authorities to show that an occupation tax may be imposed by the city of Vicksburg. The opinion in *Rodge* v. *Kelly, ante,* 209, 40 South. Rep., 552, clearly pointed out that this act is objectionable as class legislation. All in the class are not dealt with alike. A careful reading of that opinion is all that is necessary to show the manifest unconstitutionality of the act. The fears expressed as to the effect of the decision on other occupations taxed are wholly groundless. We

dealt with nothing but this particular act. The tax in this case is not imposed on all money lenders, graduating the tax according to the population of a town or the amount of loans, etc. It attempts, arbitrarily, to base the tax upon the kind of securities. Can it be possible that argument should be needed to show that the legislature could not vary the occupation tax by the single consideration as to the kind of security taken for a loan? On that, and nothing but that? Making the tax one thing if the security be mules, another if cattle, another if silverware in a store, etc.? And we clearly pointed out, before, that this act was intended to reach those who lend on the kinds of securities, as sewing machines, etc., in the actual possession of servants and other necessitous persons, and at exorbitant rates of interest; and yet, that being its purpose, it wholly failed to fix any rate of interest as exorbitant, and brought within its condemnation all money lenders, without reference to exorbitant charges, etc., and whether they loaned on pianos, etc., in the actual personal use of domestics, etc., or in a factory, or a store, or anywhere else, and without reference to any charge, exorbitant or otherwise, for the loan. In other words, the act wholly failed to accomplish the only purpose it had in view. Drawn with the not unusual legislative carelessness and lack of skill, it failed to accomplish the wholesome purpose had in view, and actually gave us a law depriving the citizen of his property without due process of law.

*Affirmed.*