LOWRY, INS. COM'R, et al. v. CITY OF CLARKSDALE et al.

(In Banc. May 6, 1929.)

[122 So. 195. No. 27796.]

*R. L. McLaurin,* of Vicksburg, and *Watkins, Watkins & Eager,* of Jackson, for appellants.

*F. J. Lotterhos,* of Jackson, for appellees.

Argued orally by *W. H. Watkins* and *J. M. Talbot,* for appellant, and *F. J. Lotterhos,* for appellee:

GRIFFITH, J., delivered the opinion of the court.

Acting under chapter 189, Laws of 1924, the city of Clarksdale has established a fireman's disability and pension fund. Section 4 of that chapter provides: "That said fund shall be created and maintained by means of the tax on insurance premiums hereinafter mentioned, such gifts and donations as may be made to said fund by any person or corporation, the proceeds of such appropriation or tax levy, or both, as may be made by such city, all fines collected for violation of the fire ordinances of such city, and one per centum of the monthly salaries of each member of such fire department."

Sections 7, 8, and 21 of said chapter are as follows:

"Sec. 7. That the governing authorities of such city, as soon as it may appear that such city is within the terms of this act, shall notify the insurance commissioner of the state of Mississippi that such city and its fire department come within the terms of this act, and said insurance commissioner of the state of Mississippi shall promptly notify all insurance companies transacting the business of fire and lightning insurance in the state of Mississippi, which shall include mutual, inter-insurer, and reciprocal associations or companies, of the fact that such city and its fire department are within the purposes of this act, and thereafter, at the time foreign insurance

companies are required to report to said insurance com-
missioner the premiums charged or received in Missis-
sippi for purposes of taxation, each of said companies,
both foreign and domestic, including mutual, inter-in-
surer and reciprocal associations or companies shall truly
report to said insurance commissioner, sending a dupli-
cate of such report to such city authorities, the amount
of premiums charged by said company for fire and light-
ning insurance on property situated in such city within
the period covered by the report made to the insurance
commissioner of the state of Mississippi for purposes of
taxation by said state, less premiums returned to policy
holder and cancellations on account of policies not taken;
it being intended that said report of premiums shall in-
clude and cover all premiums charged or received within
said period, less returned premiums and cancellations as
aforesaid in connection with the insurance of property sit-
uated in such city, which are reported for the purposes of
taxation by said state; such reports for the purposes of
this act shall not include premiums contracted for prior to
such time, as the insurance commissioner shall have noti-
fied the company that such city is within the terms and
purposes of this act; that said premiums so required to be
reported for the purpose of this act shall be and they are
hereby taxed to the extent of one-half of one per centum
of said premiums, after deducting said returned premi-
ums and cancellations, which tax shall be paid to said
insurance commissioner by the insurance company at
the same time that the other general tax on premiums is
paid to the insurance commissioner, the insurance com-
pany paying the same to notify the insurance commis-
sioner of the name of the city for whose fireman's dis-
ability and pension fund the same is paid, and, at the
same time, give such city duplicate notice of the amount
paid to the insurance commissioner, which taxes the in-
surance commissioner is hereby authorized and empow-

ered to collect in the same manner and by the same means that he is required and empowered to collect other taxes imposed upon insurance premiums.''

''Said tax on insurance premiums shall not be imposed or collected upon any premiums except upon those under insurance policies upon property situated in the municipality coming under the provisions of this act, and the tax paid hereunder for the relief of the firemen in any municipality coming under the provisions of this act, shall not be used as an element of any premium or be considered in the making of rates except in proper cases under the provisions of the rating bureau law in connection with property situated in the municipality to which said tax is paid.''

''Sec. 8. That it shall be the duty of the insurance commissioner to collect and enforce the collection of said tax of one-half of one per cent, and upon collecting the same to promptly pay it into the treasury of such city for the purposes of said fund, and this act.''

''Sec. 21. That any fire insurance company subject to the tax herein mentioned, who shall fail to make report or statement as required herein, shall forfeit to said fund the sum of one thousand dollars, to be recovered by the insurance commissioner of the state of Mississippi for the use of said fund.''

The steps directed in said sections with respect to the collection of the tax from the insurance companies were duly taken, and the companies paid to the insurance commissioner the stipulated percentages of the premiums taxed or attempted to be taxed, but made the said payments under protest, denying the constitutional validity of the said tax, thereby putting the said commissioner in the  position that he could not safely pay over the said sums until his duty so to do is declared by a court of competent jurisdiction. The commissioner has accordingly withheld said moneys, and the city to compel him to pay over  the same has brought this suit by way of a

petition for a writ of mandamus. Upon the trial in the circuit court the writ was awarded; hence this appeal.

Many interesting questions are raised, and have been ably argued at the bar. We shall consider only one of these, as it is decisive so far as concerns the funds held as aforesaid. That question is whether the tax here imposed on insurance premiums is in contravention of the equality requirements of the Federal Constitution.

"The guaranty of 'equal protection of the laws' . . . does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subject to such legislation shall be treated alike, under like circumstances and conditions, both in privileges conferred and liability imposed. It is not infringed by legislation which applies ony to those persons falling within a specified class, if it applies alike to all persons within such class, and reasonable grounds exist for making a distinction between those who fall within such class and those who do not." Cooley's Constitutional Limitations, vol. 2 (8 Ed.), pp. 824, 825. "A classification for purposes of taxation must rest on some reasonable distinction," *Schlesinger* v. *Wisconsin*, 270 U. S. 230, 240, 46 S. Ct. 260, 261, 70 L. Ed. 557, 564, 43 A. L. R. 1224; and a tax statute is void which contains classifications that are not based on any substantial difference or reason, 12 C. J., p. 1152. While reasonable classification is permitted, such classification must be based upon some real and substantial distinction which bears a reasonable, just, and proper relation to the objects sought to be accomplished, and this within the field of the subject-matter concerning which the classification is made, or in other words, the classification and the object to be accomplished must be germane. 6 R. C. L., pp. 381, 382; *Adams* v. *Standard Oil Co.*, 97 Miss. 879, 53 So. 692; *Sorenson* v. *Webb*, 111 Miss. 87, 71 So. 273; *Adams* v. *Mississippi Lbr. Co.*, 84 Miss. 23, 36 So. 68; *Hyland* v.

*Sharp,* 88 Miss. 567, 41 So. 264; *Vicksburg* v. *Mullane,* 106 Miss. 199, 63 So. 412, 50 L. R. A. (N. S.) 421; *Gulf & S. I. R. Co.* v. *Adams,* 90 Miss. 559, 45 So. 91; *Chicago, St. L. & N. O. R. Co.* v. *Moss,* 60 Miss. 641; *Ballard* v. *Mississippi Cotton Oil Co.,* 81 Miss. 507, 34 So. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476.

These in brief are the tests, and they are that, in actual substance, reasonable grounds must exist for making a distinction between those who fall within the burdened class and those who do not, and the classification made must be germane to the immediate object in view.

Thus there is at once presented the inquiry, What is the reason, the substantial reason, not one which is merely arbitrary or artificial, for the difference or distinction here made by which a certain class, from among all those directly and materially concerned in the subject-matter, is segregated, and upon that class the burden of a certain fixed tax is laid, while no such tax or the relative equivalent thereof is laid upon others likewise concerned? The principal answer that has been offered is that the establishment and adequate maintenance of a fund of this sort tends to attract to the fire-fighting service a better character of men and to make that service a more dependable and loyal branch of the municipal administration, with the result that there will be an improved efficiency in the prevention of fires and in the lessening of losses by fire, thereby saving more to insurance companies than the amount of the tax imposed.

We cheerfully concede the worthiness of the object and the soundness of the considerations mentioned touching the betterment of the service; and the answer made, we may also concede, would be good in point of law if all combustible property in the municipality were insured in admitted companies at or near its full insurable value. Unfortunately, however, in weighing the aforesaid answer, we are confronted, not with the situation last mentioned, but with what is true to the contrary as

a matter of common knowledge: First, that a part of the valuable combustible property is not insured at all; second, that a yet larger part, if not most of it, is not fully insured; and third, that some part is insured in outside companies not formally admitted and which therefore are not subject to the tax in question. There can be no question that the duty of a municipal fire department is the same towards all combustible valuable property within the municipality. It owes no greater duty towards property insured for its full insurable value than it does in respect to property not insured; its duty to partly insured property is the same as that in regard to fully insured property or to property not insured at all, and still the same towards property insured in outside companies. Such is the legal duty, but we may as well be candid enough to admit at the same time that if the average fire department should find that it could save only one of two burning buildings one of them insured and the other not, the uninsured buiding would be the more likely to be saved. This would be but a natural human impulse and personal course of action.

If then the legal duty of the fire-fighting department is as much owed towards uninsured property as towards that which is insured, and if, as we know, the personal element in an extreme emergency would favor the uninsured, it must be obvious that the answer above adverted to becomes no answer at all in point of substantial reason for the attempted distinction or classification; and no other answer as good as that mentioned has been advanced. For instance, among these answers it is in effect argued that although the duty to all species of combustible property insured and uninsured is the same, yet there is in the *status* of owners as owners, as distinguished from insurers as such, a sufficiency of distinction that upon this difference in *status* the classification may be legally upheld. It is true that such a difference

might serve for a classification for some purpose, but the argument and every similar argument overlooks the requirement that the reason upon which the classification is grounded must be a reason which has a just and substantial relation to the particular object to be accomplished—an object which is a public one, for it is fundamental that no tax may be laid to raise funds for a mere private or personal purpose. The contemplated public object to be accomplished here is the improvement of the service in the fire-fighting department, and since that improvement moves in its benefits and advantages as much and in exactly the same way towards the uninsured owner of property of a certain value as it does towards an insurance company carrying a policy in an equal amount in value on another piece of property, there is no actual difference between the two in relation to the object to be accomplished. And every argument advanced to sustain this tax runs likewise into a corner.

Under those arguments, if the tax here in question may be imposed upon fire insurance companies, then upon like principles it may be extended and these companies could be required to pay the entire expense of a city fire department, and by a parity of reasoning there could be added all the costs of construction, extension, and operation of the waterworks department, since a modern fire-fighting department is essentially dependent upon an adequate water supply. By like, or even by better, reasoning, the banks and jewelers of a city could be required to pay the entire costs of the police department on the ground that banks and jewelry stores are distinct beneficiaries of police protection against burglaries and robberies; and so on as to many other features of municipal administration.

The situation here in question is well put by the supreme court of Louisiana in *State* v. *Merchants' Ins. Co.*, 12 La. Ann. 802, a case upon the exact subject we are

here considering, in which the court said: "But in the case before us there is no property improved or assessed; . . . one class of corporations is taxed an invariable sum for the benefit of another class; there is no possibility of ascertaining whether the tax is a *quid pro quo;* the fire companies are not compelled by the law to do anything for the insurance companies; a bounty is secured to the fire department by confiscating the money of the defendants, without providing that any service shall be rendered to the defendants by the fire department; and even if this could, for a moment, be regarded as an assessment for benefits conferred, its inequality is glaring; every owner of buildings and other combustible property in New Orleans, who is either wholly or in part his own underwriter, is presumed to be benefited by the fire department in the same way as the insuranc companies are. Why should the companies alone pay taxes for this common benefit? Again: large amounts of property in New Orleans are insured abroad in offices which have no public agencies here; those offices are likewise as much benefited by the fire department as the New Orleans offices are; and yet they can be made to pay no tax under this law which is personal to the companies domiciled or represented in New Orleans." See, also, *Philadelphia Ass'n for Relief of Disabled Firemen* v. *Wood,* 39 Pa. 73; *San Francisco* v. *Liverpool & L. & G. Ins. Co.,* 74 Cal. 113, 15 P. 380, 5 Am. St. Rep. 425; *Henderson* v. *London & Lancashire Ins. Co.,* 135 Ind. 23, 34 N. E. 565, 20 L. R. A. 827, 41 Am. St. Rep. 410; *State* v. *Wheeler,* 33 Neb. 563, 50 N. W. 770; *Hanover Fire Ins. Co.* v. *Carr,* 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713; *Ætna Fire Ins. Co.* v. *Jones,* 78 S. C. 445, 59 S. E. 148, 13 L. R. A. (N. S.) 1147, 125 Am. St. Rep. 818. Compare *Phœnix Assur. Co.* v. *Fire Dept. of Montgomery,* 117 Ala. 631, 23 So. 843, 42 L. R. A. 468; *Fire Dept. of Milwaukee* v. *Helfenstein,* 16 Wis. 136; *Firemen's*

*Benev. Ass'n* v. *Lounsbury,* 21 Ill. 511, 74 Am. Dec. 115; *Exempt Firemen's Benev. Fund* v. *Roome,* 93 N. Y. 313, 45 Am. Rep. 217; *Rhinehart* v. *State,* 121 Tenn. 420, 117 S. W. 508, 17 Ann. Cas. 254.

We have proceeded to this point upon the assumption that the tax laid is to be paid in no other way than by the insurance companies themselves, that it is to come solely out of their own funds, and that they alone would ever feel the burden of the exaction. Upon that definite assumption we have endeavored to show that the tax is in contravention of the equality provisions of the Federal Constitution and that we should so declare, as we do declare and hold for the reasons above set out. But we now go further and point to the concluding paragraph of section 7 of the act. It is there seen that there is an unmistakable provision for the addition of this tax, with the consent of the rating bureau, to the premiums fixed and collected in the said municipality. When this tax is added to the premiums collected in the municipality, then we would have in real substance nothing more nor less than a situation where those who insure are paying the tax, while those who do not insure pay nothing of it; and that this then would be a discriminatory and unequal tax is too plain to require a discussion. It would be more reasonable to require that those who do not insure at all shall pay the tax; for fire losses to them are total losses, whereas when property is insured there is an amelioration of the burden of the loss, because borne jointly by the insured and the insurer.

*Reversed, and petition dismissed.*