# Richmond

COMMONWEALTH OF VIRGINIA, ETC. V. NATIONAL FIRE INSUR-
ANCE COMPANY OF HARTFORD.

January 11, 1934.

Present, All the Justices.

The opinion states the case.

*John R. Saunders, Attorney-General,* and *Wallerstein, Goode & Evans,* for the appellants.

*J. Gordon Bohannan,* for the appellee.

BROWNING, J., delivered the opinion of the court.

This case involves the validity of an act of the General Assembly of Virginia, approved March 31, 1932, and constituting chapter 414 of the Acts of the General Assembly for the same year. Acts 1932, p. 869.

Under the provisions of the act the National Fire Insurance Company of Hartford was assessed with the sum of $180.78, as a tax, based upon the premiums of its fire and lightning insurance business done within the limits of

certain cities, towns, counties and magisterial districts, in which geographical units there are organized fire departments under control of a mayor, council or other governing body.

The insurance company referred to paid, under protest, the amount assessed against it. Its protest was based upon its contention that the act is invalid because it violates certain sections of the Constitution of the State of Virginia and also section 1 of Article XIV of the amendments of the Constitution of the United States.

While the act in question is alleged to offend several sections of the Virginia Constitution we shall be concerned with only two of them. We deem it unnecessary to decide the constitutional question arising out of the alleged violation of the Constitution of the United States.

The insurance company filed its bill in the Circuit Court of the city of Richmond assailing the act as unconstitutional, praying that it be declared so and asking that it be paid back the amount of the assessment referred to.

The bill made the Commonwealth of Virginia, John M. Purcell, State Treasurer, and E. R. Combs, Comptroller, parties defendant. The defendants demurred to the bill. The court overruled the demurrer and held the act in question unconstitutional, invalid and of no binding effect and it further decreed that the assessment was illegally levied, assessed and collected, and directed, by appropriate steps, the return of the money to the company.

The act is a long and comprehensive one, and we, for the sake of being as brief as possible, adopt the analysis of the act found in the petition and brief of the appellant.

"Section 1 of the act provides that each fire and lightning insurance company, except mutual and co-operative, doing business in a city, town or county which has an organized fire department under control of a mayor, council or other governing body shall make an account of all premiums collected for business done in each such city, town or county during each calendar year. Such return shall be made to the Commissioner of Insurance and

Banking within sixty days after the 31st of December of each year.

"Section 2 of the act provides that each such company shall, within ninety days from the 31st day of December, in addition to such other taxes, pay to the Treasurer of Virginia fifty (50c) cents out of every one hundred ($100.00) dollars premiums received during the year, on fire and lightning insurance on property within such cities, towns and counties; that such fund shall constitute a firemen's relief fund to be used by disabled firemen and relief of widows and dependent children of deceased firemen, but for no other purpose; that such fund shall be held by the Treasurer of Virginia, who shall report to each session of the General Assembly the amount in his hands as of January 1st of the year in which the session is held, and that upon the General Assembly making appropriations from time to time the said fund shall be paid over to the trustees for such relief, appointed for each such city, town and county of the State.

"Section 3 of the act provides for the ministerial duties in connection with the reports made by the fire and lightning insurance companies and has no bearing on the questions presented in this case.

"Section 4 of the act provides for the appointment and control by the State of the trustees of the relief fund, requiring that they give bond, make annual reports and accounts, the approval of same, the removal of trustees and filling vacancies. This section provides that the joint membership, if more than one, or of the membership, if only one, organized fire department under chapter 125 of the Code in any city, town or county; or the regularly paid members of a fire department in any city, town or county, shall constitute a body for that purpose and shall annually during January, after five days' notice to all members, elect three trustees, who shall be qualified voters of such city, town or county and members of a fire company or fire department of such city, town or county. The trustees shall have no power to act until their ap-

pointment is approved and entered of record by the Circuit Court of the county or the Corporation Court of the city, if none, then the Circuit Court having jurisdiction. The trustees shall give one hundred ($100.00) dollars bond before the clerk of such court, with surety approved by such court, payable to the Commonwealth, conditioned for the faithful and proper management and accounting of said fund. The clerk of said court shall send a copy of such appointment to the Commissioner of Insurance and Banking. The trustees shall annually, before February 1st, file with the clerks of the courts approving their appointment, a report setting out their transactions, receipts and expenditures, and the trustees shall also send a copy of their annual report in duplicate, accompanied by proper vouchers, to the Commissioner of Insurance and Banking, which, if not approved by him, no further sums shall be appropriated and paid to them until such report is approved and filed by said Commissioner of Insurance and Banking. The said trustees shall serve without compensation, but may be removed by the court which appointed them upon misfeasance or nonfeasance shown, upon written complaint of any citizen after five days' notice; any vacancy shall be filled by such court upon the nomination of the fire company or department.

"Section 5 of the act provides that the Commissioner of Insurance and Banking shall have the authority and it shall be his duty to investigate any case in which he may have reason to believe that any fraud, misrepresentation or mistake has been made in any of the returns provided for by the act.

"Section 6 of the act provides for enforcing the payment required of fire and lightning insurance companies in the Circuit Court of the city of Richmond by the Commissioner of Insurance and Banking, and further provides for certain penalties for violations.

"Section 7 of the act provides that the funds arising from payments required to be made by fire and lightning insurance companies shall, under proper appropriation

laws as the General Assembly of Virginia may from time to time enact, be paid to the trustees for the various cities, towns and counties, which trustees shall disburse the same for the following purposes:

"1. For the relief of injured and disabled members of any fire department of such city, town or county.

"2. For the relief of those actually dependent upon the services of any fireman who has lost life in the fire service of the city, town or county, and for the payment of the necessary funeral expenses of any member of such fire department."

The sections of the Constitution of Virginia which we shall notice are sections 67 and 188.

Section 67 provides, in part, that the General Assembly shall not make any appropriation of public funds to any charitable institution which is not owned or controlled by the State, with certain exceptions, which need no comment, as they are not germane to this discussion. The section, however, provides that the General Assembly shall not be prohibited from authorizing counties, cities or towns to make such appropriations.

The first question that is suggested is this: Are the funds assessed and collected, under the terms of the act, public funds? If the assessment is a tax by governmental power and the funds realized and collected thereunder represents the aggregate, or a part of the tax assessed, then assuredly it is a public fund. A fund created by such a tax can be none other than a public one. Is the assessment provided for by the act a tax? The title of the act is, in part, in these words: "* * * to levy a tax upon the premiums collected." Section 2 of the act provides that the insurance companies assessed thereunder shall pay to the Treasurer of Virginia so much money, "in addition to such other taxes." The terms of an act are certainly to be considered as reflective of its real character, the purposes to be accomplished by it and its meaning. In the act in question the assessment is designated as a tax and the subsequent collection and disposal of the fund, in

some striking particulars, are very like those incident to the treatment and disposition of tax funds. We think there can be no serious doubt about the funds, provided by the assessment and collection features of the act, being public funds.

And next arises the question, Does the final disposition of the fund or funds, provided by the terms of the act, constitute an appropriation of those funds?

Again we go to the terms of the act, which provides, "That upon the General Assembly making appropriations from time to time the said fund shall be paid over to the trustees for such relief appointed for each such city, town and county of the State." Section 7 of the act provides that the funds arising from payments required to be made by the designated insurance companies shall be paid to the trustees, under proper appropriation laws as the General Assembly of Virginia may from time to time enact.

It is true that the terms of the act do not constitute a present and immediate appropriation but they do provide for the appropriation of the fund by apt laws to be made from time to time by the General Assembly. Is an appropriation to be effected *in futuro* by the terms of the act any less an appropriation? By what other legal means could the fund leave the hands of the Treasurer of Virginia, its custodian by the act, and go into the hands of the trustees for the beneficiaries? The inescapable conclusion, in our view, is that the act provides for and carries an appropriation within the meaning of the section of the Constitution with which we are dealing.

Our next inquiry is whether the disposition of the fund to be realized under the terms of the act offends the section of the Constitution which forbids the appropriation of public funds to any charitable institution which is not owned or controlled by the State. Const., section 67. We may not call fire departments charitable institutions, and we do not, but the manifest intent and purpose of the constitutional provision was to prohibit the appropriation of public funds, created by the levy of a tax and

paid into the State treasury, for charitable purposes of this character.

In the case of *Trustees of Exempt Firemen's Fund* v. *Roome,* 93 N. Y. 313, 45 Am. Rep. 217, the court said that when the State takes from the public treasury a sum of money and gives it to a corporate body for the relief of deserving beneficiaries, it does one of two things: "It either bestows a charity or recognizes and discharges an obligation due from it to the recipients." No obligation of the State to fire departments or their members and their dependents is perceived in this case. If this is so, the appropriation of the funds to the designated beneficiaries must be a charitable one, and the State, under the · Constitution, has no right to dispense such a charity.

In the case of *Aetna Fire Insurance Co.* v. *Jones, Comptroller General,* 78 S. C. 445, 59 S. E. 148, 151, 13 L. R. A. (N. S.) 1147, 125 Am. St. Rep. 818, a statute very like the one with which we are dealing was under consideration. It required fire insurance companies doing business in incorporated cities or towns, having regularly organized fire departments under the control of the mayor and council, to make a return of premiums received and pay to the State Treasurer two per cent of such premiums on fire and lightning insurance business done in such cities and towns. The State Treasurer was required to pay the amount which he collected under this assessment to the treasurer of the Firemen's Relief Association, for the relief of any member of the fire department who might be injured or disabled and for the relief of the widow or those dependent upon any member who might be killed and for the payment of funeral expenses, etc. This act was held to be unconstitutional.

The court said: "In the present case the legislature has gone further than attempting to raise money for *fire departments, municipal organizations,* in that it seeks to raise a fund by taxation for what seems to us merely a *benevolent purpose.* The money collected under the act of 1906 is not for the use of the fire department, but it is

to be paid to certain firemen's associations for benefits, gratuities, and pensions. These associations are incorporated under the law, and their sole purpose is to take charge of the funds collected and disburse them in the manner provided for by the act. As was said in the cases above quoted from, such a purpose is certainly a worthy one, and it would no doubt be a source of much comfort to the members of the various departments, and would have a tendency to allure men to the vocation; but, can this effect justify the seemingly arbitrary appropriation of the income of the insurance companies? It is argued that the fire company, by its work, saves the insurance company from loss, and therefore the insurance company should compensate them. Let us see what this argument would lead to. It is well known that all insurance companies regulate their rate by the risk and expense relative to the insurance of a certain piece of property. Therefore, the only reasonable view is that the insurance companies would in the end make the insured pay gratuities to the associations. It is likewise well known that in all cities and towns there are numerous persons who do not carry insurance. Now, it cannot be denied that such persons are even more benefited by the fire departments than those who carry insurance, for their entire risk is intrusted to the efficiency of such departments. Under the enactment being considered, the class of citizens who carry insurance must pay the whole of the imposition, while the latter get the benefits and have no burden to bear. On this reasoning the tax is not uniform." (Italics supplied.)

See, also, the case of *Philadelphia Association for the Relief of Disabled Firemen* v. *Wood,* 39 Pa. St. 73. This case involved the validity of a statute of the same character as is here in issue. The court had this to say: "This in an association for charitable purposes, it is true, but still it is strictly a private corporation. No public officer has any official knowledge of its existence, or of its members, organization, or acts. It renders no account of its

proceedings or of its funds. It is a close corporation, fixing its own terms of membership, and changing its organization, but not its object, as it pleases. *The imposition upon the defendant below, or on his principals, of the duty of contributing to its support, is therefore simply taking one man's property and giving it to another.* It is depriving a man of his property without due process of law, even when it is sought to be done through the instrumentality of the courts, for the legislature cannot require one man to give his money to another, and then give him an action to enforce their will, and expect this to be treated as a remedy by due course of law. (Italics supplied.)

"If the legislature may command such a contribution as this, we are unable to see why they may not command every citizen to contribute not only to this association, but to every charitable association; and indeed, to every man who spends his time and means in a charitable way. There are associations for all sorts of charity; why may not the legislature require all of us to contribute to them all, if they may require this class of people to contribute to this one? We cannot answer this question."

These cases afford very apposite authority, we think, for the view that the purpose of the act is a charitable one, and thus is in derogation of the constitutional prohibitory provision. In our view of the matter the contention of counsel for the appellee that the act of 1932, under consideration, is not essentially different, in any vital particular, from the act of March 11, 1908, of the General Assembly of Virginia (Acts 1908, chapter 181), is correct.

The latter act was under attack, on constitutional grounds, in the case of *Aetna Insurance Company* v. *Joseph Button, Commissioner of Insurance,* in an appropriate action in the Chancery Court of the city of Richmond, Judge Daniel Grinnan presiding. The act was held to be unconstitutional as violative of section 67 of the Virginia Constitution, the section which we are now discussing.

This court declined to grant an appeal from the decision in that case. It is, therefore, authority for the holding of the lower court. The opinion is as follows, with a note appended thereto by the editor of the Virginia Law Register, volume 18, at page 97:

"Daniel Grinnan, J. The demurrer to the bill in this suit presents the question of the constitutionality of the act of the General Assembly of Virginia, approved on March 11, 1908 (Acts 1908, ch. 181, p. 259), entitled 'An act to create a firemen's relief fund and to increase the efficiency of the fire departments in the cities, towns and counties of Virginia.'

"The act has been assailed upon a great many grounds, but it will be necessary to mention only two, in my view of the case.

"It appears to me very clearly to contravene the letter and spirit of that portion of section 67, article IV, of the present Constitution which provides 'nor shall the General Assembly make any like appropriation to any charitable institution, which is not owned or controlled by the State,' with an exception not relevant to this case.

"It also appears to me that it is very clear that the tax imposed by the act is for a private, not a public, purpose, and that, therefore, it cannot be sustained.

"I am of opinion that the act in question is unconstitutional and that the demurrer should be overruled.

"Note.—This statute required all fire or lightning insurance companies doing business in any city, town, county or district in Virginia having a regular organized fire department, etc., to render an account to the Commissioner of Insurance of all premiums collected on business done within such cities, towns, etc., each year, and to pay a tax of one per cent thereon, to constitute a fund for the benefit of the firemen's relief fund association of each city, town, etc. The constitutionality of the statute was assailed on various grounds, only two of which were noticed in the opinion. The bill alleged that the corporations to which the proceeds of the tax were to be even-

tually paid over were private corporations having no connection with the governmental organizations of the State or its political divisions, and that the payment of the tax in the first instance into the treasury of the State was a mere administrative incident, and did not alter the fact that it was levied for a private and not a public purpose. The other ground alleged was that it violated section 67, article IV, of the Constitution, in that it made an appropriation to a charitable institution not owned or controlled by the State. Both of these objections seem to have been well taken, and the decision of the Chancery Court against the constitutionality of this legislation seems to be thoroughly sound, and not to require any citation of authority to support it beyond the fundamental principles governing the power of the legislature in enacting statutes taxing one class for the benefit of another, and laying taxes for private and not public purposes."

We do not think that the bestowal of the fund, which is the product of the assessment and its collection from the insurance companies assessed, upon the beneficiaries designated by the act could be fairly regarded as an obligation due from the State to the recipients. If such obligation exists it is from the county or municipality or other political subdivision and such an obligation appears to have been in the minds of the framers of the Constitution when the last paragraph of the section, which is an exception to the general inhibitions and which is as follows: "But nothing herein contained shall prohibit the General Assembly from authorizing counties, cities, or towns to make such appropriations to any charitable institution or association."

The next infringement upon the constitutional provision, under discussion, as we view it, is that fire departments and the statutory set-up for the relief of their disabled firemen and certain of their dependents are not owned or controlled by the State. It is contended by the appellants that this point is met by the contention that an organized fire department which is under control of the

mayor, council or other governing body, is under control of the State for the reason that a mayor, council or other governing body is in control of a local subdivision of the State. The force of this suggestion is weakened when the extent to which it might be applied is realized. We know of no real control which the State has over a mayor or council of a municipality or a board of supervisors of a county.

In the brief of counsel for the appellee, it is said: "The fact that the fire department is under the control of the mayor, council or other governing body of the city or town certainly gives the State no control over the trustees, who, under section 7 of the act, are given 'full control of the funds derived from the provisions of this act.' In fact, such municipal control and the control which section 120 of the Constitution confers upon the mayor (as to which see page 27 of the petition and *supra* in this reply), the control which section 3127 of the Code confers on the city council, and the provisions of section 3144a of the Code and the following sections, all of which are referred to *supra,* negative the idea of State control and would seem to show conclusively that such employees are *municipal employees* and that the counties and cities of the State are authorized by statute to provide for the relief of firemen and the dependent children of firemen who have lost their lives through injuries received or illness incurred while in the performance of their duties. These provisions of the Code recognize that this is not a legal obligation. If it were no statute would be necessary to enable the cities to discharge it. These provisions of the Code further recognize that if there is any obligation it is the obligation of the locality and not of the State." See *City of Richmond* v. *Virginia Bonded Warehouse Corp.,* 148 Va. 60, 138 S. E. 503, 54 A. L. R. 1485.

With this statement we are in accord.

Counsel for the appellants seek to distinguish the act of 1932 from that of 1908 in certain particulars, the most important of which is the allegation that the latter act

made an appropriation, whereas the former does not. This is an error, for both of the acts provide for appropriations in a similar manner.

It is undoubtedly true that in some States such statutes as that which we are discussing have been upheld, and in other States the opposite view has been taken. While it would appear that the authorities are at variance, we know of no decision in any jurisdiction which involves a constitutional section just like ours. Many cases have been cited by counsel for the appellants, but we think that most of them can be distinguished from the case in judgment. To do so would require space and time to the point of tediousness.

The Constitution of the State, if it be consistent with the Federal Constitution, is the fundamental law of the State, is part of its supreme law, and acts passed by the legislature inconsistent with it are invalid. Any attempt to do that which is prohibited is repugnant to that supreme and paramount law, and is invalid. The courts are not at liberty to overlook or disregard the commands of the Constitution, and when a statute transgresses the authority vested in the legislature by the Constitution, it is the duty of the courts to declare the act unconstitutional. See 6 R. C. L., pages 40 and 72.

Section 188 of the Constitution of Virginia is as follows: "No other or greater amount of tax or revenue shall, at any time, be levied than may be required for the necessary expenses of the government, or to pay the indebtedness of the State."

Much of what we have said in discussing the act of 1932 in relation to section 67 of the Constitution is applicable in a discussion of the act with respect to this section, and we shall not repeat it.

In the case of *Henderson* v. *London & Lancashire Insurance Co.*, 135 Ind. 23, 34 N. E. 565, 568, 20 L. R. A. 827, 41 Am. St. Rep. 410, the court considered the validity of an act, which was said to be violative of the provisions of the State Constitution, which created a firemen's pension

fund and a board of trustees of such fund. The act provided that foreign insurance companies should report to the auditor of each county in the State wherein there was a city having fire department paid by said city the gross amount of receipts on account of insurance premiums on property in such county for the preceding six months, and the losses paid during the same period. The assessment against the companies was designated as a firemen's pension fund, which was held and disbursed as the act provided. The act was declared unconstitutional, and this was said:

"But it is insisted that the declared burden is for a public purpose in that it is levied for the benefit and compensation of those, and the families of those, whose lives have been, or may be, imperiled or lost in pursuing the arduous and dangerous duties of saving from the flames the property of the citizens; that in the discharge of these duties the firemen sustain such relation to the public as to become, in the true sense, public servants; that the public demands the highest degree of skill, diligence and good faith from these servants, and that this degree is best attained by holding out to them the certainty of care when injured, and family supported when age, disease, or death comes upon them. To establish this contention, counsel devote considerable space in their briefs to quotations from text-writers and from adjudged cases, principally the cases we have referred to as not adhering to the proposition that this exaction is a tax, and they exhibit marked ability in building the theory so urged upon us. To this theory we are not inclined to give our adherence. The Wisconsin rule does not hold that the right exists in behalf of firemen *as public servants.* It disregards the relationship existing between firemen and the public, and justifies the exaction as the exercise of a police power, and in imposing the burden upon foreign companies as the condition upon which they are admitted to do business in the State. * * *

"Our Constitution gives no such unlimited power to the

legislature, and as an authority for the construction of powers under our Constitution, we cannot accept this decision. Nor are we inclined to give special weight to it in favor of the contention of the appellant that firemen are public servants, within that sense which would admit of *the exercise of the taxing power of the State.* * * *

"While the fund for the benefit of the city is obtained from the companies, the companies must first obtain it from the whole people of the county, thus requiring the people of the county, indirectly, to contribute to the pensioning of city firemen. The question, therefore, should be, *are the firemen benefited the servants of those whose taxing power is exerted in their behalf?* We think they are not, even if we should concede that they were in any sense servants or dependent upon the bounty, or were the objects of the charity of the people of such cities. It must be borne in mind that *they are not the servants of the State;* they are not the servants of the county in which they live. Though they may deserve the highest praise and the most liberal rewards for their daring and hardships in combating the flames, *they are the creatures and the servants of but a small subdivision of the State."* (Italics supplied.)

See, also, *Aetna Insurance Co.* v. *Jones, Comptroller General, supra,* where it was said: "The act is attacked on numerous grounds, but we think the pivotal question is: Has the General Assembly power to enact such legislation? In other words: Is the Constitution violated, in that the tax here under consideration is not uniform and for no public purpose? That the imposition is an attempted exercise of the taxing power conferred by the Constitution, the respondent practically admits, in that it is sought to sustain the exaction on the ground that it is for a public purpose. 'A tax,' according to Webster's Dictionary, 'is a rate or sum of money assessed on the person or property of a citizen by the government for the use of the nation or State.' Cooley in his Constitutional Limitations, 6th Ed., p. 587, says: 'Taxes are * * * burdens or charges

imposed by the legislative power upon persons or property, to raise money for public purposes.' Applying either of these rules to the legislation here in question, if it be conceded that the aid of firemen is a public purpose, it clearly falls under the head of taxation, for all of the requirements are fulfilled, namely, that it is an imposition on person or property by the government for a public purpose. * * *

"This brings us, then, to the question as to whether or not the legislation here under consideration has in view a public purpose. The money secured from the imposition on the insurance companies is to 'be held in trust and used as a trust fund for the relief of any member of the fire department of such city or town who may be injured or disabled, and for the relief of, or payment of gratuities to, the widow or those dependent upon any member of such fire department who may be killed, for the payment of necessary funeral expenses of any member of such fire department, and for the purchase of accident insurance upon the members of such fire departments,' and, in certain cases, to be used for the payment of pensions. * * *

"The question is exceedingly close and difficult, and the authorities, as we have seen, are conflicting; but we are inclined to give adherence to the latter view; especially where the benefits go to a firemen's benefit association, *the public purpose seems to be lacking.* Therefore, we hold that the act cannot be sustained on the ground that it is a police regulation; the important characteristic, publicity of purpose, being wanting. It cannot be doubted that incidentally the public derives much benefit from fire departments of municipal corporations. Any organization that tends to enhance the value of property or the security of its possession; that gives work to unemployed persons in a given locality, or bridles powers hitherto unused, is certainly after a manner beneficial to the public at large. The wealth and welfare of a State lies in the well-being of its individual citizens. Thus, if a factory employing hundreds of hands and annually turning out

thousands of dollars' worth of products is built, or a mine which yearly puts on the market hundreds of tons of mineral is opened up, the incidental benefit to the public is great; yet the highest legal tribunal of the country has held that public funds cannot be appropriated for such a purpose. *Citizens' Sav. & L. Ass'n* v. *Topeka,* 20 Wall. (U. S.) 663, 22 L. Ed. 461. *A fire department is a municipal institution.* Its organization and control is purely a matter of *municipal concern.* True, interest in the establishment of such agencies would extend further than the municipal boundaries, but whether that interest could be manifested in action on the part of the General Assembly, otherwise than to encourage, seems a matter of doubt; the spirit of our law being that the legislature may invest municipal governments with power, leaving the exercise of it to their discretion and corporate needs." (Italics supplied.)

In our judgment the act of 1932 is an infraction of section 188 of the Constitution of Virginia, in that its provisions for a levy and an assessment of a tax upon insurance companies, for its avowed purpose, does not present a scheme in which it can be perceived that the fund derived is required for necessary expenses of government or to pay the indebtedness of the State.

It follows that we affirm the decree of the lower court.

*Affirmed.*