# Richmond

## CITY OF HAMPTON, ETC. v. INSURANCE COMPANY OF NORTH AMERICA, ETC.

April 21, 1941.

Record No. 2301.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

*Walter M. Evans, J. Wilton Hope, Jr.,* and *Virgil R. Goode,* for the appellant.

*J. Gordon Bohannan,* for the appellee.

BROWNING, J., delivered the opinion of the court.

The city of Hampton, Virginia, pursuant to authority vested in it by chapter 387 of the Acts of the General Assembly of Virginia of 1934, passed an ordinance on the 25th of April, 1935, providing, among other things, for the levy of a tax on fire insurance companies for the benefit of what is designated as a ''firemen's relief fund'', and for assessing and collecting the tax, and for the election of trustees for the administration of said fund, including the method of its payment to the designated beneficiaries. The levy is assessed ''upon each and every person, partnership, company or corporation which contracts on his, their, or its account, to issue policies or contracts for or agreements for fire insurance.'' The annual tax is $1.00 on each $100.00 of gross premiums, except reinsurance premiums, collected and received by them, less returned premiums, from fire insuranc policies covering property situated within the limits of the city during the preceding calendar year. The purpose of the fund so created is the relief of firemen injured or disabled under certain circumstances and the relief of their dependents, the firemen referred to being members of the fire department or departments of the municipality.

The ordinance is an extended and detailed one. The above statement of a portion of its provisions is deemed sufficient for the purposes of this opinion.

The statute which is the basis of the ordinance is designated in Michie's Code of Virginia, 1936, as sections 3144t, 3144u, 3144v and 3144w.

The city of Hampton levied the assessment authorized by the statute and the ordinance and sought to collect the amounts of the tax for the years 1936 and 1937, which were $4.19 and $22.11, respectively, by a suit in chancery instituted in the Circuit Court of Elizabeth City county,

Virginia, the insurance company having refused to pay the same. The trial court denied the relief prayed for by the city and enjoined it from collecting the tax. It declared the act and the ordinance unconstitutional and void. The city appealed from the decree.

The validity of the statute and, of course, that of the ordinance, is now brought in question as being violative of sections 11, 67 and 168 of the Constitution of Virginia, and of section 1 of Article 14 of the amendments to the Constitution of the United States. Section 11 of the Constitution of Virginia provides that no person shall be deprived of his property without due process of law. Section 67 provides for limitations on appropriations by General Assembly to charitable and other institutions, with certain exceptions. Section 168 of the Constitution is as follows:

"All property, except as hereinafter provided, shall be taxed; all taxes whether state, local or municipal shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general law. The General Assembly may define and classify taxable subjects, and, except as to classes of property herein expressly segregated for either state or local taxation, the General Assembly may segregate the several classes of property so as to specify and determine upon what subjects state taxes and upon what subjects local taxes may be levied."

It is the alleged contravention of the last section that we shall be concerned with. It is, as we see it, the major question. It is the alleged constitutional infraction which is most palpable.

An examination of the Act of 1934 and the ordinance in question imposing the tax reveals its lack of equality and uniformity. It is seen at once that a burden is placed upon a limited class of insurers or taxpayers for the purpose of the relief of a certain other limited class of persons or citizens. Under the guise of

taxation, money is taken from the pockets of a certain class or type of persons and put in the tills of another class of persons. When we look for a reason for this apparent disregard of the spirit which underlies all forms of taxation, we find its alleged justification in the suggestion of a *quid pro quo;* that certain fire insurance companies should be required to pay a tax to provide a fund for needy members of the fire departments of the municipalities in which they are because the fire insurance companies are benefited by the existence and the functioning of the fire departments.

With the thought of the constitutional requirement of equality and uniformity of taxation, we are led to a step further to the inquiry, are there others, who are benefited as much or more than those smarting under the tax imposition, who go unwhipped of its burden?

The answer, manifestly, is that, of the persons who own property within the corporate limits of municipalities, there are those who carry no fire insurance at all. They are benefited as much or more than insurance companies by the activities of fire departments. Likwise, there are those who are insured for less than the full value of their property, and they benefit directly from the same cause. If the state, county and municipality own property within the corporate limits, they receive direct benefits. Indeed, the public generally is benefited by the protection afforded from conflagrations which damage and destroy property and subject the public itself to injury and death.

The above is a paraphrase of the enumeration of those benefited which was made by the court in the very illuminating case of *Continental Ins. Co.* v. *Smrha,* 131 Neb. 791, 270 N. W. 122, which points out that there can be no question that the duty of a fire department is the same towards all combustible property within the municipality, and that it owes no greater duty towards property insured for its full insurable value than it does to property that is only partly insured, or not insured at all.

It is said that if a fire company were faced with the choice of selecting for the duty of quenching a house afire, that was fully insured, or one that was not insured at all, it would, in all human probability, select the one which was uninsured. This was said to be in harmony with human characteristics.

Thus it is seen that as to a classification founded upon benefits bestowed, which this is said to be, uniformity is non-existent.

This Court in effect said in *Helfrick* v. *Commonwealth,* 29 Gratt. (70 Va.) 844, that if inequality and want of uniformity in the burden it imposes are stamped upon the face of the law, the law must be pronounced invalid.

The constitutional requisites of uniformity of taxation means that all property of the same class shall be taxed alike. There is a quotation from Mills' Political Economy, book 5, chapter 2, paragraph 2, from the case of *Adams* v. *Mississippi State Bank,* 75 Miss. 701, 23 So. 395, which is this:

"Equality of taxation means apportioning the contribution of each person towards the expense of government so that he shall feel neither more nor less inconvenience from his share of the payment than every other person experiences."

In the case of *Commonwealth* v. *National Fire Ins. Co. of Hartford,* 161 Va. 737, 172 S. E. 448, this court quoted, with approval, from the case of *Aetna Fire Ins. Co.* v. *Jones,* 78 S. C. 445, 59 S. E. 148, 125 Am. St. Rep. 818, 13 L. R. A. (N. S.) 1147, the following:

"In the present case the legislature has gone further than attempting to raise money for *fire departments, municipal organizations,* in that it seeks to raise a fund by taxation for what seems to us merely a *benevolent purpose.* The money collected under the act of 1906 is not for the use of the fire department, but it is to be paid to certain firemen's associations for benefits, gratuities, and pensions. These associations are incorporated under

the law, and their sole purpose is to take charge of the funds collected and disburse them in the manner provided for by the act. As was said in the cases above quoted from, such a purpose is certainly a worthy one, and it would no doubt be a source of much comfort to the members of the various departments, and would have a tendency to allure men to the vocation; but, can this effect justify the seemingly arbitrary appropriation of the income of the insurance companies? It is argued that the fire company, by its work, saves the insurance company from loss, and therefore the insurance company should compensate them. Let us see what this argument would lead to. It is well known that all insurance companies regulate their rate by the risk and expense relative to the insurance of a certain piece of property. Therefore, the only reasonable view is that the insurance companies would in the end make the insured pay gratuities to the associations. It is likewise well known that in all cities and towns there are numerous persons who do not carry insurance. Now, it cannot be denied that such persons are even more benefited by the fire departments than those who carry insurance, for their entire risk is intrusted to the efficiency of such departments. Under the enactment being considered, the class of citizens who carry insurance must pay the whole of the imposition, while the latter get the benefits and have no burden to bear. On this reasoning, the tax is not uniform.''

\*   \*   \*   \*   \*

''The act is attacked on numerous grounds, but we think the pivotal question is: Has the general assembly power to enact such legislation? In other words: Is the Constitution violated, in that the tax here under consideration is not *uniform* and for *no public purpose?* That the imposition is an attempted exercise of the taxing power conferred by the Constitution, the respondent practically admits, in that it is sought to sustain the exaction on the ground that it is for a public purpose. 'A

tax,' according to Webster's Dictionary, 'is a rate or sum of money assessed on the person or property of a citizen by the government for the use of the nation or state.' Cooley in his Constitutional Limitations, 6th ed., p. 587, says: 'Taxes are * * * burdens or charges imposed by the legislative power upon persons or property, to raise money for public purposes.' Applying either of these rules to the legislation here in question, if it be conceded that the aid of firemen is a public purpose, it clearly falls under the head of taxation, for all of the requirements are fulfilled, namely, that it is an imposition on person or property by the government for a public purpose.

&ast; &ast; &ast; &ast; &ast;

"This brings us, then, to the question as to whether or not the legislation here under consideration has in view a public purpose. The money secured from the imposition on the insurance companies is to 'be held in trust and used as a trust fund for the relief of any member of the fire department of such city or town who may be injured or disabled, and for the relief of, or payment of gratuities to, the widow or those dependent upon any member of such fire department who may be killed, for the payment of necessary funeral expenses of any member of such fire department, and for the purchase of accident insurance upon the members of such fire departments', and, in certain cases, to be used for the payment of pensions.

&ast; &ast; &ast; &ast; &ast;

"The question is exceedingly close and difficult, and the authorities, as we have seen, are conflicting; but we are inclined to give adherence to the latter view; especially where the benefits go to a Firemen's Benefit Association *the public purpose seems to be lacking*. Therefore, we hold that the act cannot be sustained on the ground that it is a police regulation; the important characteristic, publicity of purpose, being wanting. It cannot be doubted that incidentally the public derives much

benefit from fire departments of municipal corporations. Any organization that tends to enhance the value of property or the security of its possession, that gives work to unemployed persons in a given locality, or bridles powers hitherto unused, is certainly after a manner beneficial to the public at large. The wealth and welfare of a state lies in the well being of its individual citizens. Thus, if a factory employing hundreds of hands and annually turning out thousands of dollars worth of products is built, or a mine which yearly puts on the market hundreds of tons of mineral is opened up, the incidental benefit to the public is great; yet the highest legal tribunal of the country has held that public funds cannot be appropriated for such a purpose. *Citizens' Sav. & L. Asso.* v. *Topeka,* 20 Wall. 663, 22 L. Ed. 461. *A Fire Department is a municipal institution.* Its organization and control is purely a matter of *municipal concern.* True, interest in the establishment of such agencies would extend further than the municipal boundaries, but whether that interest could be manifested in action on the part of the general assembly, otherwise than to encourage, seems a matter of doubt; the spirit of our law being that the legislature may invest municipal governments with power, leaving the exercise of it to their discretion and corporate needs." (Italics supplied.)

From the case of *Henderson* v. *London & Lancashire Ins. Co.,* 135 Ind. 23, 34 N. E. 565, 20 L. R. A. 827, 41 Am. St. Rep. 410, we quote further as follows:

"It is said that the act is an attempted exercise by the legislature of the power of taxation, and that, being local, *not uniform,* and for no public purpose, is in violation of the taxing powers as conferred by the constitution, article 10 section 1. That provision of the constitution is as follows: 'The general assembly shall provide by law for a *uniform* and *equal rate of assessment and taxation;* and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for

municipal, educational, literary, scientific, religious, or charitable purposes as may be specially exempted by law.' Is the enactment of the law before us an attempted exercise of the power of taxation as conferred by the constitution? In several states this character of legislation has been before the courts for construction and we find the decided weight of authority holding that it is such an attempt.

\* \* \* \* \*

"Here we have a law enacted in the pretended exercise of the taxing power of the state, exacting a penalty from that part of the class of foreign insurance companies which do business in the four counties of this state having cities with paid fire departments, and the fund thus exacted by the power of the state is not for the benefit of the state, is not for the benefit of those portions of the state whose business with such companies must contribute to said fund. The business done in each of the four counties affected bears the burden of the exaction, and the fund is devoted to the benefit of firemen within four cities only. The property of such counties outside of such cities gets no protection from such firemen, and its owners have no pecuniary interest in them.

\* \* \* \* \*

"Here the taxing power of the state is exerted for the *benefit of a few of the citizens of the state, who hold the obligation of their respective cities for their courage and their valued service,* and the purpose is that this power shall be exerted for the discharge of that obligation. We do not regard this as the most objectionable feature of this act. We have ninety-two counties in this state, whose united power is thus exerted in levying a tax upon certain foreign insurance companies. As to the state, all foreign insurance companies constitute a class, and of this class all are not subject to the operations of this act; only those who do business in four of such counties. The *taxing power of the state cannot thus be made the means of levying municipal taxes upon*

*a fraction of a class, and of bestowing the tax so levied upon a small fraction of the citizens of the state—all of her citizens standing in like relation to her, unless she owes them some peculiar obligation not existing in serving as firemen for some city.* The taxing district of the state, wherein taxes are directed for the benefit of those serving the state, is the whole state. State taxes are not of uniform and equal rate when they apply to a portion of a class only, and omit a portion of the same class, and this is no less true because the class may be divided by county lines.

*"Uniformity in rate, as required by the constitution means that the same rate shall apply alike to all in any given taxing district."* (Italics supplied.)

The citations quoted elaborate the points to which we have adverted, and are interesting judicial pronouncements of their soundness.

It will be noted that the case of the *Commonwealth* v. *National Fire Ins. Co. of Hartford, supra,* while very much like the case we are considering in the principles enunciated, was predicated upon a different tax structure, the act of 1932.

There can be no question but that the inequality and lack of uniformity of the act and the ordinance we have been considering is glaring. It is the more so when we realize that the tax here is upon certain stock fire insurance companies which are admitted to do business in Virginia, while non-admitted companies, mutual companies, reciprocals, and property owners who insure in such companies, or do not insure at all, or who insure for less than the full value, are not subjected to the onus of the tax, but are advantaged and benefited, as are those against which the tax is imposed.

In the case of *Robinson* v. *City of Norfolk,* 108 Va. 14, 60 S. E. 762, 128 Am. St. Rep. 934, 15 L. R. A. (N. S.) 294, this court quoted from Cooley on Taxation (2nd Ed.), ch. 5, pp. 140, 141, 142:

"A State purpose must be accomplished by State

taxation; a county purpose by county taxation; or a public purpose for any inferior district by taxation of such district. This is not only just but it is essential. To any extent that one man is compelled to pay in order to relieve others of a public burden properly resting upon them, his property is taken for private purposes, as plainly and palpably as it would be if appropriated to the payment of the debts or the discharge of obligations which the person thus relieved by his payments might owe to private parties.''

*     *     *     *     *

''It is certainly difficult to understand how the taxation of a district can be defended where people have no voice in voting it, in selecting the purposes, or in expending it.''

And in the opinion in the case last cited, this court said:

■ ''Certainly the legislative department of the government cannot arbitrarily take the property of one citizen to give it to another, and, of course, cannot authorize others to do so.''

One of the most instructive and logically reasoned cases to which we have been pointed is that of *Lowry* v. *City of Clarksdale*, 154 Miss. 155, 122 So. 195. We feel justified in quoting from it at rather unusual length:

''Thus there is at once presented the inquiry, what is the reason, the substantial reason, not one which is merely arbitrary or artificial, for the difference or distinction here made by which a certain class, from among all those directly and materially concerned in the subject-matter, is segregated, and upon that class the burden of a certain fixed tax is laid, while no such tax or the relative equivalent thereof is laid upon others likewise concerned? The principal answer that has been offered is that the establishment and adequate maintenance of a fund of this sort tends to attract to the fire-fighting service a better character of men and to make that service a more dependable and loyal branch of the

municipal administration, with the result that there will be an improved efficiency in the prevention of fires and in the lessening of losses by fire, thereby saving more to insurance companies than the amount of the tax imposed.

"We cheerfully concede the worthiness of the object and the soundness of the considerations mentioned touching the betterment of the service; and the answer made, we may also concede, would be good in point of law if all combustible property in the municipality were insured in admitted companies at or near its full insurable value. Unfortunately, however, in weighing the aforesaid answer, we are confronted, not with the situation last mentioned, but with what is true to the contrary as a matter of common knowledge: First, that a part of the valuable combustible property is not insured at all; second, that a yet larger part, if not most of it, is not fully insured; and third, that some part is insured in outside companies not formally admitted and which therefore are not subject to the tax in question. There can be no question that the duty of a municipal fire department is the same towards all combustible valuable property within the municipality. It owes no greater duty towards property insured for its full insurable value than it does in respect to property not insured; its duty to partly insured property is the same as that in regard to fully insured property or to property not insured at all, and still the same towards property insured in outside companies. Such is the legal duty, but we may as well be candid enough to admit at the same time that if the average fire department should find that it could save only one of two burning buildings, one of them insured and the other not, the uninsured building would be the more likely to be saved. This would be but a natural human impulse and personal course of action.

"If then the legal duty of the fire-fighting department is as much owed towards uninsured property as towards that which is insured, and if, as we know, the personal element in an extreme emergency would favor

the uninsured, it must be obvious that the answer above adverted to becomes no answer at all in point of substantial reason for the attempted distinction or classification; and no other answer as good as that mentioned has been advanced. For instance, among these answers it is in effect argued that although the duty to all species of combustible property insured and uninsured is the same, yet there is in the status of owners as owners, as distinguished from insurers as such, a sufficiency of distinction that upon this difference in status the classification may be legally upheld. It is true that such a difference might serve for a classification for some purpose, but the argument and every similar argument overlooks the requirement that the reason upon which the classification is grounded must be a reason which has a just and substantial relation to the particular object to be accomplished—an object which is a public one, *for it is fundamental that no tax may be laid to raise funds for a mere private or personal purpose.* The contemplated public object to be accomplished here is the improvement of the service in the fire-fighting department, and since that improvement moves in its benefits and advantages as much and in exactly the same way towards the uninsured owner of property of a certain value as it does towards an insurance company carrying a policy in an equal amount in value on another piece of property, there is no actual difference between the two in relation to the object to be accomplished. And every argument advanced to sustain this tax runs likewise into a corner.

"Under those arguments, if the tax here in question may be imposed upon fire insurance companies, then upon like principles it may be extended and these companies could be required to pay the *entire expense of a city fire department,* and by a parity of reasoning there could be added all the costs of construction, extension, and operation of the waterworks department, since a modern fire-fighting department is essentially dependent upon an adequate water supply. By like, or even by bet-

ter, reasoning, the banks and jewelers of a city could be required to pay the entire costs of the police department on the ground that banks and jewelry stores are distinct beneficiaries of police protection against burglaries and robberies; and so on as to many other features of municipal administration.'' (Italics supplied.)

The purpose of this statute and ordinance, and similar ones, is altruistic and praiseworthy, and it seems phlegmatic and stolid to put an obstacle in the way of their being. This impulse, however, must not cause us to hesitate in the preservation of the integrity of the Constitution, which is the foundation of our structure of government.

We are conscious of the fact that efforts to create funds like this one have been a prolific source of litigation, and we are aware that there has not been a unanimity of judicial determination of the matter; but the weight of authority and reasoning, we think, warrant the thoughts and expressions we have indulged. Other questions and kindred ones of exceeding importance and interest have been discussed and amplified in the briefs of counsel. To discuss them would far extend this opinion, which is already longer and more detailed than we would have wished it to be.

The statute and ordinance are unconstitutional and void, for the reasons herein expressed.

*Affirmed.*