Present:  Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Lacy, S.J.

FFW ENTERPRISES

OPINION BY
v.      Record No. 091883        JUSTICE S. BERNARD GOODWYN
November 4, 2010
FAIRFAX COUNTY, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

FFW ENTERPRISES

v.      Record No. 091930

FAIRFAX COUNTY ECONOMIC
DEVELOPMENT AUTHORITY, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stanley P. Klein, Judge

In these appeals,[1] we consider whether Code §§ 58.1-3221.3

and 33.1-435 violate the Constitution of Virginia (the

Constitution).  FFW Enterprises (FFW) owns commercially-zoned

real property located in Fairfax County.  The property has been

assessed taxes as authorized by Code § 58.1-3221.3 and Code

§ 33.1-435, and FFW is challenging the constitutionality of

those tax statutes.

I.  Procedural History

In 2008, FFW brought an action against Fairfax County (the

County) and the Board of Supervisors of Fairfax County (the

---

[1] The appeal of Parkridge 6, LLC, et al. v. Fairfax County
Economic Development Authority, Record No. 092006, which was
consolidated with these cases, was dismissed by order dated
August 30, 2010.

Board) in the Circuit Court of Fairfax County for refunds of taxes paid pursuant to Code § 33.1-435 and Code § 58.1-3221.3. FFW contended that these two tax statutes were facially unconstitutional in violation of the uniformity requirement of Article X, Section 1 of the Constitution because the statutes impose certain taxes on commercial and industrial real properties within the County, while excluding other real property.

The parties submitted a joint stipulation of facts and proceeded on cross motions for summary judgment. The circuit court denied FFW's motion for summary judgment, but granted the County's motion for summary judgment, holding that FFW failed to prove that the statutes were unconstitutional. In its letter opinion, the circuit court stated:

> For this court to invalidate the legislative classification of property for taxation purposes, there must be no rational basis for the classification. The County has posited several conceivable rational bases for the classifications in this case:
>
> > For example, the General Assembly may have believed that commercial and industrial property would benefit disproportionately from the transportation improvements to be made using tax revenues (as the landowners requesting creation of the Phase I District asserted in their Petition), perhaps because such improvement might enable more intense commercial and industrial uses than otherwise would be possible and thus potentially could result in more significantly increased commercial and industrial property values.

2

> The General Assembly may have believed that
> residents would share indirectly in the costs
> of transportation improvements by a tax levied
> only on commercial and industrial property, in
> that they would pay higher prices for goods
> and services because the owners of such
> properties likely would attempt to recover the
> cost of the additional tax burden from
> customers and tenants, and thus to impose the
> tax on residential properties would result in
> a form of undesirable double taxation of
> residents.  The General Assembly may have
> believed that because of the potential
> opportunity for owners of commercial and
> industrial properties to pass at least some of
> the cost of the additional tax burden on to
> others, such properties could more easily,
> fairly, and equitably bear that burden.

> It is not the County's burden, however, to prove that
> there is a rational basis for the classification.
> The burden rests upon the challenger of a tax
> classification to prove that no reasonable basis for
> that classification can be conceived.  FFW has failed
> to meet that burden.

FFW appeals (Record No. 091883).

In 2009, after the above-mentioned case concluded, the

Fairfax County Economic Development Authority (EDA) brought a

complaint in the Circuit Court of Fairfax County under Code

§ 15.2-2650, et seq., concerning validation of Transportation

District Improvement Revenue Bonds (the Bonds).  The Bonds were

to be repaid by the proceeds of the tax levied pursuant to Code

§ 33.1-435.  Under the provisions of Code § 15.2-2651, such a

proceeding may validate, inter alia, "the tax or other means

provided for payment of the bonds," so EDA sought a ruling that

a tax per Code § 33.1-435 is constitutional.  FFW, as a

3

property owner in the County, intervened in the bond validation proceeding as a statutory defendant under Code § 15.2-2650, et seq., and opposed the EDA's complaint.  FFW appeared at that proceeding to reserve its rights as to the constitutional arguments made in the prior case.  The circuit court held that the imposition of the tax pursuant to Code § 33.1-435 complied with the Constitution and entered an order validating the bonds.  FFW appeals (Record No. 091930).

Upon joint motion of the parties, this Court has consolidated the two appeals (Record Nos. 091883 and 091930). Both appeals concern the constitutionality of the relevant tax statutes.

## II.  Factual Background

Code § 33.1-431 was enacted by the General Assembly in 2001.  See 2001 Acts ch. 611.  It permits a county with a population of more than 500,000[2] to create a transportation district and impose a special improvements tax on real property zoned for commercial or industrial use (or used for such purposes), as well as on taxable leasehold interests located within that transportation district.  Code §§ 33.1-430, -431 and -435.  One of the requirements for creating such a

---

[2] At present, Fairfax County is the only county in Virginia with a population of over 500,000.  See U.S. Census Bureau, State & County QuickFacts, Fairfax County, Virginia,

transportation district is that the owners of at least fifty-one percent of either the land area or of the assessed value of real property within the proposed transportation district, whose property would be subject to the tax, must petition the county and ask that the district be created and that property in the district be taxed. Code § 33.1-431(A). Revenues raised by this tax are either to be dedicated to transportation improvements within the district, or to be paid to the Commonwealth Transportation Board. Code §§ 33.1-431, -435 and -436.

In 2003, pursuant to Code § 33.1-431, the owners of at least fifty-one percent of the assessed value of real property zoned for commercial or industrial use, or used for such purposes, located within the boundaries of the proposed district, petitioned the Board to create the Phase I Dulles Rail Transportation Improvement District (the District). The owners submitting the petition contended that the District should be subject to taxation in accordance with Code § 33.1-435, in order to fund a portion of the cost of extending the "Metrorail" service toward Dulles Airport, specifically, the extension of the Orange Line of Metrorail from Falls Church to Reston. The petition contended that the owners of taxable real

---

http://quickfacts.census.gov/qfd/states/51/51059.html (last visited Nov. 2, 2010).

estate zoned for commercial or industrial use, and subject to taxation under Code § 33.1-435, would "benefit specially" from the proposed transportation improvements.

The Board adopted resolutions in 2004 to create the proposed District.[3]  Beginning in 2006, the tax authorized by Code § 33.1-435 began to be levied on the real property located in the District that was zoned for commercial or industrial use or used for such purposes, including property owned by FFW. FFW paid the taxes assessed under Code § 33.1-435 for tax years 2006, 2007 and 2008.  Residential real property located within the District is not subject to the tax.

Code § 58.1-3221.3 was adopted by the General Assembly in 2007.  See 2007 Acts ch. 896.  In summary, that statute permits all counties and cities embraced by the Northern Virginia Transportation Authority to assess a tax on real property zoned or used for commercial and industrial uses.  The proceeds of such tax are dedicated to local transportation improvements. Residential real property is not subject to the tax.

In 2008, the Board began to levy and collect a tax authorized by Code § 58.1-3221.3 on all commercial and industrial property located within Fairfax County as an

---

[3] FFW stipulates that all actions of the Board and County have been done in strict accordance with the statutory requirements of the respective Code sections.

additional part of the funding strategy for transportation improvements in the County.  For tax year 2008, FFW paid $546.96, as assessed under Code § 58.1-3221.3.

III.  Analysis

FFW claims that the taxes imposed pursuant to Code §§ 58.1-3221.3 and 33.1-435 violate the uniformity requirement of Article X, Section 1 of the Constitution.  FFW argues that the statutes are unconstitutional because, applying the principle of expressio unius est exclusio alterius[4] in interpreting the Constitution, Article X, Section 1 requires the General Assembly to treat all real property within a given jurisdiction as a single indivisible class for purposes of taxation.  FFW further asserts that even if the General Assembly does have the constitutional authority to classify real property within a jurisdiction, the classifications used in Code §§ 58.1-3221.3 and 33.1-435 are unconstitutional because they lack any reasonable basis.

There is a strong presumption in favor of the constitutionality of statutes.  Town of Ashland v. Board of Supervisors, 202 Va. 409, 416, 117 S.E.2d 679, 684 (1961); Hunton v. Commonwealth, 166 Va. 229, 236, 183 S.E.2d 873, 876 (1936).  Indeed, "[t]here is no stronger presumption known to

7

the law than that which is made by the courts with respect to the constitutionality of an act of Legislature." Whitlock v. Hawkins, 105 Va. 242, 248, 53 S.E. 401, 403 (1906). Any reasonable doubt as to the constitutionality of a statute must be resolved in favor of its constitutionality, and "[o]nly where it is plainly in violation of the Constitution may the court so decide." Almond v. Gilmer, 188 Va. 822, 834, 51 S.E.2d 272, 276 (1949). The General Assembly may enact any law or take any action "unless it is prohibited by the state or federal constitution in express terms or by necessary implication." Dean v. Paolicelli, 194 Va. 219, 227, 72 S.E.2d 506, 511 (1952); see also Kirkpatrick v. Board of Supervisors, 146 Va. 113, 126, 136 S.E. 186, 190 (1926).

"We will not invalidate a statute unless that statute clearly violates a provision of the United States or Virginia Constitutions." Marshall v. Northern Virginia Transportation Authority, 275 Va. 419, 427, 657 S.E.2d 71, 75 (2008) (citing In re Phillips, 265 Va. 81, 85-86, 574 S.E.2d 270, 272 (2003); City Council of Emporia v. Newsome, 226 Va. 518, 523, 311 S.E.2d 761, 764 (1984)). Here, we are only concerned with the applicable provisions of the Constitution of Virginia. "The party challenging an enactment has the burden of proving that

---

[4] "A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the

8

the statute is unconstitutional." Id. at 428, 657 S.E.2d at 75

(citing Hess v. Snyder Hunt Corp., 240 Va. 49, 53, 392 S.E.2d

817, 820 (1990); Blue Cross of Virginia v. Commonwealth, 221

Va. 349, 358-59, 269 S.E.2d 827, 832-33 (1980)).

When challenging the legality of an assessment,

> [T]he burden of proof shall be upon the taxpayer to show that the property in question is valued at more than its fair market value or that the assessment is not uniform in its application, or that the assessment is otherwise invalid or illegal, but it shall not be necessary for the taxpayer to show that intentional, systematic and willful discrimination has been made.

Code § 58.1-3984(A).

FFW urges this Court to adopt "the rule of universality" and to hold that the uniformity provision of Article X, Section 1 mandates that all real property be deemed one indivisible subject class for purpose of taxation, subject only to the express exceptions contained in the Constitution itself. FFW states that the rule of universality it urges this Court to adopt is simply a shorthand term for the application of the principle of expressio unius est exclusio alterius to the uniformity provision contained in Article X, Section 1 of the Constitution. FFW, citing Wade J. Newhouse, Constitutional Uniformity and Equality in State Taxation § 2.03(B), at 18 (2d ed. 1984), contends that "[w]hether a state's constitutional uniformity requirement mandates a 'rule of universality' –

alternative." Black's Law Dictionary 661 (9th ed. 2009).

9

i.e., prohibits the state legislature from exempting particular classes of property from taxation beyond those exemptions expressly provided in the Constitution itself" – can be determined by the structure and language of the subject constitution itself.  FFW concludes that the structure and language of the Constitution, properly construed, implies that a rule of universality with regard to the taxation of real property exists.

FFW argues that the specification in the Constitution of certain types of real estate eligible for an exemption, deferral or relief from taxation[5] implies that types of real

---

[5] Article X, Section 1 provides in part:

All property, except as hereinafter provided, shall be taxed. All taxes shall be levied and collected under general laws and shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, except that the General Assembly may provide for differences in the rate of taxation to be imposed upon real estate by a city or town within all or parts of areas added to its territorial limits, or by a new unit of general government, within its area, created by or encompassing two or more, or parts of two or more, existing units of general government . . . .   The General Assembly may define and classify taxable subjects.

Article X, Section 2 provides in part:

The General Assembly may define and classify real estate devoted to agricultural, horticultural, forest, or open space uses, and may by general law authorize any county, city,

estate not so specified, such as residential real estate as a whole, shall not be entitled to exemption, deferral or relief. FFW asserts the natural reading of Article X, Sections 1, 2 and 6, applying the doctrine of expressio unius est exclusio alterius, results in the conclusion that the uniformity clause in Article X, Section 1 requires all real property within a given jurisdiction be treated as a single, indivisible class for the purpose of taxation, except for the exceptions specifically mentioned in the Constitution. Thus, FFW claims that Code §§ 58.1-3221.3 and 33.1-435 are unconstitutional because those statutes violate the uniformity clause in Article X, Section 1.

---

town, or regional government to allow deferral of, or relief from, portions of taxes otherwise payable on such real estate if it were not so classified, provided the General Assembly shall first determine that classification of such real estate for such purpose is in the public interest for the preservation or conservation of real estate for such uses.

Article X, Section 6 states in part: "Except as otherwise provided in this Constitution, the following property and no other shall be exempt from taxation, State and local, including inheritance taxes," after which a list of certain classes of property is provided.

FFW notes that residential real property as a whole is not listed in the Constitution of Virginia "under any of these sections as a class of property that may receive a deferral of, or relief or exemption from, taxation."

We disagree.  When addressing the power of the General Assembly, the appropriate starting place is the first paragraph of Article IV, Section 14, which provides:

> The authority of the General Assembly shall extend to all subjects of legislation not herein forbidden or restricted; and a specific grant of authority in this Constitution upon a subject shall not work a restriction of its authority upon the same or any other subject.  The omission in this Constitution of specific grants of authority heretofore conferred shall not be construed to deprive the General Assembly of such authority, or to indicate a change of policy in reference thereto, unless such purpose plainly appear.

Va. Const. art. IV, § 14.  As described by Prof. Howard, the portion of the constitutional provision quoted above states two propositions:

> (1)  that the Legislature has the power to legislate on any subject unless the Constitution says otherwise;
>
> (2)  that the canon of construction, expressio unius est exclusio alterius, does not apply in interpreting the legislative powers of the General Assembly.

1 A.E. Dick Howard, Commentaries on the Constitution of Virginia 538 (1974); see also Report of the Commission on Constitutional Revision 152-53 (Jan. 1, 1969).  The Constitution does not grant power to the General Assembly; it only restricts powers "otherwise practically unlimited."  Lewis Trucking Corp. v. Commonwealth, 207 Va. 23, 29, 147 S.E.2d 747,

751 (1966); see also Terry v. Mazur, 234 Va. 442, 449, 362 S.E.2d 904, 908 (1987).

FFW's argument urging this Court to adopt a "rule of universality" is based upon the incorrect premise that the Constitution delegates powers and specifies authority, and that incorrect premise results in too narrow an interpretation of the power of the General Assembly.  In contrast to the federal Constitution, the Constitution of Virginia "is not a grant of legislative powers to the General Assembly, but is a restraining instrument only, and, except as to matters ceded to the federal government, the legislative powers of the General Assembly are without limit."  Harrison v. Day, 201 Va. 386, 396, 111 S.E.2d 504, 511 (1959); accord City of Roanoke v. Elliott, 123 Va. 393, 406, 96 S.E. 819, 824 (1918).

Although no provisions of the Constitution directly limit the General Assembly's authority to define and classify taxable subjects, FFW asserts that application of the doctrine of expressio unius est exclusio alterius creates an implied "rule of universality" restricting the General Assembly's authority on this subject.  Arguments based on implied constitutional limitations on the legislative power of the General Assembly are particularly disfavored.  "If there be any restraints by implication, the restraint must be so necessary and so plainly manifest as to require the implication in order to enforce the

13

restraints expressly imposed." Breckenbridge v. County School Board, 146 Va. 1, 5-6, 135 S.E. 693, 695 (1926); see Marshall, 275 Va. at 428, 657 S.E.2d at 75-76. "[W]hen a court, in determining the constitutionality of a statute, departs from the express limitations of the Constitution and relies instead on implied constitutional restrictions, the legislative usurpation must be very clear and palpable to justify the court's holding that an enactment is unconstitutional." Marshall, 275 Va. at 428, 657 S.E.2d at 76 (citing Whitlock, 105 Va. at 249, 53 S.E. at 403).

Among the powers of the General Assembly expressly recognized by the Constitution is the authority to define and classify taxable subjects. Va. Const. art. X, § 1. We hold that Virginia law does not support FFW's argument that the Constitution contains an unstated, implied ban on the ability of the General Assembly to classify commercial and industrial real estate differently from other real estate for taxation purposes.

FFW argues that even if this Court declines to adopt the "rule of universality" with regard to real property, the taxes imposed by Code §§ 58.1-3221.3 and 33.1-435 are unconstitutional under the uniformity provision of Article X, Section 1 of the Constitution because the tax classifications therein lack a reasonable basis. It is clear that Article X,

Section 1 grants the General Assembly the ability to "define and classify taxable subjects."  However, that power is not absolute.  Any such classification must rest upon a reasonable basis.  In determining whether a tax classification is unconstitutional for lack of uniformity under Article X, Section 1, we have stated that the classification may not be "arbitrary, discriminatory or unreasonable."  East Coast Freight Lines v. City of Richmond, 194 Va. 517, 527, 74 S.E.2d 283, 289 (1953).  This standard has been likened to "rational basis" scrutiny.  Board of Supervisors v. McDonald's Corp., 261 Va. 583, 591, 544 S.E.2d 334, 339 (2001) (using same standard for zoning ordinances); see also Commonwealth v. Whiting Oil Co., 167 Va. 73, 78, 187 S.E. 498, 500 (1936).  "One who assails the classification . . . must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."  Whiting Oil Co., 167 Va. at 78, 187 S.E. at 500.

FFW has presented a facial challenge to the constitutionality of the tax classifications in Code §§ 58.1-3221.3 and 33.1-435, and it has the burden of proving that there is no reasonable basis for the classification legislated by the General Assembly.  FFW bears the burden of negating every basis that might reasonably support the General Assembly's presumptively constitutional decisions to classify

15

specified kinds of real property as objects of taxation in Code §§ 33.1-435 and 58.1-3221.3.

Citing City of Hampton v. Insurance Co. of North America, 177 Va. 494, 14 S.E.2d 396 (1941), FFW claims that a tax on a particular class of property to raise revenue for a specific purpose lacks a rational basis, and is not uniform under Article X, Section 1 of the Constitution, if those not part of the taxed class benefit from the purpose of the tax as much or more than those who are taxed. FFW notes that the subject tax statutes only tax certain commercial or industrial real property and exclude residential real property from the respective tax classes. FFW also notes that the challenged taxes, by their terms, collect revenues for the purpose of funding transportation improvements that either benefit the entire taxing locality or the general public as a whole. According to FFW, these facts are sufficient to prove that the challenged tax statutes violate the uniformity provision, and the circuit court erred in failing to find the tax statutes unconstitutional.

In City of Hampton, this Court considered the constitutionality of state statutes under which the city of Hampton passed an ordinance levying a tax on fire insurance companies licensed to do business in Virginia. Id. at 496, 14 S.E.2d at 396. The Hampton tax was on fire insurance policies

covering property within the city's limits, and the proceeds of the tax were for the benefit of a firemen's relief fund.  Id. The Court was asked to determine the constitutionality of the tax classification under the uniformity provision of the Constitution at the time.[6]  Id. at 497, 14 S.E.2d at 397.

This Court stated:

> An examination of the Act of 1934 and the ordinance in question imposing the tax reveals its lack of equality and uniformity.  It is seen at once that a burden is placed upon a limited class of insurers or taxpayers for the purpose of the relief of a certain other limited class of persons or citizens.  Under the guise of taxation, money is taken from the pockets of a certain class or type of persons and put in the tills of another class of persons.  When we look for a reason for this apparent disregard of the spirit which underlies all forms of taxation, we find its alleged justification in the suggestion of a quid pro quo; that certain fire insurance companies should be required to pay a tax to provide a fund for needy members of the fire departments of the municipalities in which they are because the fire insurance companies are benefited by the existence and the functioning of the fire departments.
>
> With the thought of the constitutional requirement of equality and uniformity of taxation, we are led to a step further to the inquiry, are there others, who are benefited as much or more than those smarting under the tax imposition, who go unwhipped of its burden?

Id. at 497-98, 14 S.E.2d at 397.

The decision in City of Hampton is based upon the circumstances present in that case, specifically, the limited

---

[6] Va. Const. § 168 (1902).

17

class of beneficiaries of the tax and the quid pro quo justification given for that tax. FFW's reliance upon City of Hampton, in this instance, is misplaced because similar circumstances are not present. Here, the class of beneficiaries is broad and multiple justifications were offered for the tax.

Moreover, even if the "benefit/burden" test of City of Hampton is applied to this case, the circuit court did not err in finding that FFW failed to present evidence that residential property owners will be benefited by the proceeds of the property taxes "as much [if] not more" than commercial and industrial property owners. FFW asserts that it need only demonstrate that others who are untaxed will benefit from the transportation improvements funded by the taxes. However, that does not prove, and there is no evidence in the record, that they will benefit as much or more from those improvements as the property owners in the taxed class, especially in this instance when a majority of the taxpayers subject to the tax imposed by Code § 33.1-435 have declared that they will benefit specially from the proposed transportation improvements. FFW has failed to posit or to present evidence concerning any other reason why the tax classifications chosen by the General Assembly are unreasonable or arbitrary.

18

IV.  Conclusion

We hold that FFW has failed to meet its burden to prove that no reasonable basis for the tax classifications in Code §§ 58.1-3221.3 and 33.1-435 can be conceived.  The fact that untaxed others will benefit to some extent from the improvements funded by the taxes does not prove that there is no rational basis for the tax classifications approved by the General Assembly.

For the foregoing reasons, we will affirm the judgments of the circuit court.

                                                    Affirmed.